**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Sid Cecil PUETT, Defendant-Appellant.**

**No. 83–8454.**

United States Court of Appeals, Eleventh Circuit.

July 11, 1984.

---

Vernon S. Pitts, Jr., Federal Defender Program, Inc., Atlanta, Ga., for defendant-appellant.

Rimantas A. Rukstele, Asst. U.S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before KRAVITCH and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

On August 24, 1982, defendant-appellant Sid Cecil Puett was arrested and a complaint was filed charging him with conspiring to defraud banks and financial institutions in violation of 18 U.S.C. § 371. Puett immediately was brought before a United States Magistrate and released on a personal appearance bond. A preliminary hearing was scheduled for September 2, 1982. On August 27, 1982, three days after the filing of the complaint, the govern-

ment filed a motion to dismiss the complaint, which the magistrate granted on September 3, 1982. More than three months later, on December 9, 1982, an indictment was returned charging Puett with fraudulently obtaining money from banks and financial institutions by use of wire, radio or television communications in violation of 18 U.S.C. § 1343 and conspiring to do so in violation of 18 U.S.C. § 371.

Puett filed separate motions to dismiss the charges on grounds that the indictment violated the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, and that the government used unconscionable methods of inducing him to engage in illegal activities in violation of his due process rights. On March 17, 1983, the magistrate recommended that the motions be denied, and on April 6 the district court issued an order following the recommendation.

On April 12, 1983, Puett, his counsel and counsel for the government agreed to submit the matter to the district court for trial on stipulated facts. After reviewing the stipulations, the court found Puett guilty on each count and sentenced him to a term of five years imprisonment to be followed by a period of probation.

Puett raises three grounds for reversal: (1) the indictment was brought beyond the time allowed under the Speedy Trial Act; (2) he was denied due process of law because the government gained a tactical advantage by delaying in bringing the indictment; and (3) he was denied due process of law by the government's outrageous and unconscionable conduct in its investigation. We disagree with appellant's contentions and affirm the decision of the district court.

## I. *Speedy Trial Act*

 Title 18 U.S.C. § 3161(b) provides that an indictment must be filed within

thirty days from the date on which the individual was arrested or served with summons.[1] If the indictment is not filed within the thirty-day period, the complaint must be dismissed. 18 U.S.C. § 3162(a)(1). The government arrested Puett and filed a complaint on August 24, 1982, the complaint was dismissed at the government's request on September 3, and an indictment was returned on December 9, 107 days after Puett's arrest. The question presented is whether the time elapsing between the dismissal of the initial complaint and return of the indictment should be included for purposes of compliance with section 3161(b).

When a complaint is dismissed by the government and an indictment is later filed, section 3161(d)(1) governs the relevant time period. *United States v. Krynicki,* 689 F.2d 289, 292 (1st Cir.1982); *United States v. Peters,* 587 F.2d 1267, 1273 (D.C.Cir.1978). Section 3161(d)(1) provides in part:

> If … any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter …. an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

The meaning of this section is not immediately apparent. The provision can be read to require that a subsequent indictment must be filed within thirty days of the original arrest or first issuance of summons as provided in subsection (b). This interpretation has been rejected, however. The better construction of section 3161(d)(1) is that after the dismissal of the complaint, the Act's time limits run anew from the date of filing of the subsequent

---

1. 18 U.S.C. § 3161(b) provides:

 Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with

such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

complaint or indictment. *See United States v. Bittle*, 699 F.2d 1201, 1205 (D.C. Cir.1983); *Krynicki*, 689 F.2d at 293; *United States v. Abernathy*, 688 F.2d 576, 580 (8th Cir.1982).

A contrary interpretation would render section 3161(d)(1) superfluous because section 3161(b) already places a thirty-day limit on the period between arrest or issuance of summons and indictment. Were we to read section 3161(d)(1) as Puett maintains, section 3161(b) alone would be sufficient to require dismissal of an indictment returned more than thirty days after the filing of a previously dismissed complaint. Congress drafted section 3161(d)(1) precisely to preclude such an interpretation:

> [Section 3161(d)(1) ] allows latitude to the prosecutor to re-institute prosecution of a criminal defendant whose case has previously been dismissed on non-speedy trial grounds without having to comply with the time limits imposed by the filing of the earlier complaint. To require a prosecutor to conform to indictment and trial time limits which were set by the filing of the original complaint in order to reopen a case on the basis of new evidence would be an insurmountable burden. Thus, when subsequent complaints are brought, the time limits will begin to run from the date of the filing of the subsequent complaint.

S.Rep. No. 93–1021, 93d Cong., 2d Sess. 33 (1974), *reprinted in* A. Partridge, *Legislative History of Title I of the Speedy Trial Act of 1974*, 78–89 (1980). Our construction is also consistent with the traditional view that speedy trial guarantees focus only on *pending* criminal prosecutions. In holding that the sixth amendment speedy trial guarantee is inapplicable to the period between dismissal of a military charge and a subsequent indictment on a civilian charge, the Supreme Court stated, "[T]he Speedy Trial Clause has no application af-

ter the Government, acting in good faith, formally drops charges. Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause ...." *United States v. MacDonald*, 456 U.S. 1, 102 S.Ct. 1497, 1501, 71 L.Ed.2d 696 (1982). *Cf. United States v. Hernandez*, 724 F.2d 904 (11th Cir.1984) (seventy-day period provided in section 3161(c)(1) commences to run on date of arraignment under second indictment).

Upon the government's dismissal of the original complaint, there was no prosecution pending against Puett. We therefore hold that the return of Puett's indictment 107 days after filing of the complaint did not violate the protections of the Speedy Trial Act.

## II. *Dismissal for Tactical Advantage*

 The due process clause of the fifth amendment requires dismissal of an indictment if the defendant can show that pre-indictment delay (1) caused actual prejudice to the conduct of his defense and (2) was the product of deliberate action by the government designed to gain a tactical advantage. *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *United States v. Lindstrom*, 698 F.2d 1154 (11th Cir.1983). Puett contends that the government's dismissal of the original charges against him was intended solely for the purpose of gaining a tactical advantage in his prosecution and that he was prejudiced by the delay.[2] There is some evidence that the ability of Puett's court-appointed counsel to prepare for trial may have been impaired by the government's delay in indicting Puett because his trial eventually was scheduled shortly after the conclusion of another complex trial conducted by the same attorney. We need not decide whether Puett was actually prejudiced by the delay, however, because the

---

**2.** The government contends that Puett's failure to raise this argument in the district court bars him from bringing it on appeal absent plain error. *See United States v. Sentovich*, 677 F.2d 834, 837 (11th Cir.1982). Although it is unclear whether Puett raised his due process argument

before the magistrate, he did present the issue to the district court in his objections to the magistrate's recommendation. Since the district court had the opportunity to address the merits of appellant's contention, review by this court is appropriate.

record is devoid of any evidence that the government dismissed the original complaint for tactical reasons. Appellant claims that the charges were dropped before the preliminary hearing for the purpose of denying him the opportunity to examine the evidence against him when the government attempted to establish probable cause. The government maintains that it moved to dismiss the complaint to protect the identity of confidential informants and to continue an ongoing investigation of a larger bank fraud scheme. Since Puett offered no evidence in support of his theory or contrary to the government's, the district court properly refused to hold that the pre-indictment delay denied him due process of law.

### III. *Unconscionable Conduct*

Rather than contending that he was the victim of government entrapment, Puett maintains that the government employed unconscionable conduct in the course of its investigation in violation of his rights under the due process clause by exploiting his severe financial problems and inducing him to engage in fraudulent schemes despite his repeated insistence on legitimate business practices. His argument relies upon *United States v. Russell,* 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973), where the Supreme Court recognized the possibility that "the conduct of law enforcement agents [may be] so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction." *Id.* at 1643. One example of such outrageous conduct is when the government instigates the criminal activity, provides the entire means for its execution, and runs the entire operation with only meager assistance from the defendant. *See United States v. Tobias,* 662 F.2d 381, 386 (5th Cir. Unit B 1981), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982).

We have recognized that government infiltration of criminal activity is a legitimate and permissible means of investigation and frequently necessitates the government agent's supplying something of value to the criminal. *Id.* Examining the conduct of Puett and the government agents in light of these standards, we conclude that the government's behavior was not so outrageous as to deprive Puett of due process of law. The record shows that Puett offered to sell the agents fraudulent securities, cashier's checks, certificates of deposit and letters of credit. Thereafter he made most of the arrangements to procure the fraudulent documents by ensuring their printing and clearance through a bank in the British West Indies. The stipulated facts presented to the district court demonstrate that Puett not only had a predisposition to engage in the illegal activity, but that he played a significant role in the enterprise as well. He offered much more than "meager assistance" to the successful accomplishment of the operation. Hence this claim also fails.

AFFIRMED.