**PUBLISH**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

_____

No. 95-5546

_____

D.C. Docket No. 95-258-CR-DLG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MIGUEL SANCHEZ,
JOSE MANUEL DURAN, et al.,

Defendants-Appellants.

_____

Appeals from the United States District Court for the
Southern District of Florida

_____

**(April 16, 1998)**

Before TJOFLAT and BIRCH, Circuit Judges, and RONEY, Senior Circuit Judge.

RONEY, Senior Circuit Judge:

The charges in this case grew out of a government created reverse sting scenario by which the defendants agreed to invade and steal drugs from a house they thought contained illegal drugs. In fact, there was no house and there were no drugs. Five co-defendants, however, three of whom are on this appeal, conspired with a government informant and with each other. That conspiracy violates the drug laws of the United States.

Miguel Sanchez, Guillermo Diaz and Jose Manuel Duran appeal their convictions and sentences for conspiracy to possess with intent to distribute cocaine and marijuana, in violation of

21 U.S.C. §§ 846 and 841. Diaz appeals also his conviction and sentence for using a firearm in the commission of a drug offense under 18 U.S.C. § 924(c). We affirm as to all issues except that we vacate the enhancement sentence of Duran and remand for strict compliance with 21 U.S.C. § 851.

A general summary of the facts without all the details is sufficient for an understanding of the issues raised on this appeal. In December 1994, the Bureau of Alcohol, Tobacco and Firearms (ATF) received information from a confidential informant about a group of armed home invaders who would "rip-off" narcotics from stash houses. Working with an informant and recording some of the conversations, the government created a reverse sting operation by which the defendants agreed to all the details of a home invasion. They were arrested in a parking lot where they had assembled in readiness for going to the stash house to steal the drugs, which they had been told would involve 50 kilograms of cocaine and 300 pounds of marijuana.

Defendants raise numerous issues on appeal which will be discussed separately, along with such other facts as may be necessary to understand our decision as to each issue. It is understood that if any defendant would prevail on an issue that applied equally to the other defendants, they would all get the advantage of that decision even if the point was not fully argued in the individual brief.

I.

As to any argument about the insufficiency of evidence to support the conspiracy convictions, we would affirm under Eleventh Cir. R. 36-1. The recorded conversations and the testimony of the government agents was clearly sufficient to support the jury verdict of guilt as to all of the defendants.

II.

2

A common and more troublesome issue presented by all defendants on this appeal is the fact that the crime was, in effect, created by the government. There being no real drugs involved, the amount used for sentencing guideline purposes was the amount set by the government informant under direction from a government agent.

Whether argued as outrageous government conduct, sentencing entrapment, sentencing factor manipulation, or as a quarrel with the amount of drugs used for sentencing purposes, however, the law of this Circuit does not permit a reversal under the facts of this case. Defendants argue that the conduct of the government in creating a fictitious crime for them to commit -- robbery of a non-existent house allegedly stocked with large quantities of cocaine and marijuana, which did not in fact exist -- was so outrageous as to warrant either dismissal of the superceding indictment, or reversal of their convictions, or a downward departure of their sentences.

*Outrageous Government Conduct* - This Court recognizes the defense of outrageous governmental conduct, a defense interrelated with the sentencing manipulation theory. This defense focuses on the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's predisposition. The question, however, is whether the methods comport with the Fifth Amendment's guarantee of due process. *See United States v. Russell*, 411 U.S. 423, 431-32 (1973) ("While we may some day be presented with a situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction, . . . the instant case is distinctly not of that breed") (citation omitted). *United States v. Haimowitz,* 725 F.2d 1561, 1577 (11th Cir.) ("Whether outrageous governmental conduct exists 'turns upon the totality of the circumstances with no single factor controlling' and the defense 'can only be invoked in the rarest and most

3

outrageous circumstances.' " ), *cert. denied*, 469 U.S. 1072 (1984).  The government contends and neither Sanchez nor Duran dispute that they failed to seek dismissal of the indictment in the district court on the ground of outrageous governmental conduct, and their appeal of this issue is therefore barred.  Defendants would not prevail even were we to reach the merits of their claim.  While the Supreme Court and this Court have recognized the possibility that government involvement in a criminal scheme might be so pervasive that it would be a constitutional violation, that standard has not yet been met in any case either before the Supreme Court or this Court.  *See United States v. Gianni*, 678 F.2d 956, 959-60 (11th Cir.), *cert. denied*, 459 U.S. 1071 (1982).  Government infiltration of criminal activity is a recognized and permissible means of investigation, *see United States v. Russell,* 411 U.S. at 432; *United States v. Puett,* 735 F.2d 1331, 1335 (11th Cir. 1984), and frequently requires that the government agent furnish something of value to the criminal.  *See Puett,* 735 F.2d at 1335.  The fact that government agents may supply or sell illegal drugs or provide other essential services does not necessarily constitute misconduct.   *See Hampton v.  United States,* 425 U.S. 484,  489 (1974).  Moreover, challenges to the "reverse sting" method of police investigation have  been rejected by this Court on numerous occasions.  *See United States v. Savage,*  701 F.2d 867, 869-70 (11th Cir.1983);  *United States v. Gianni* at 960; *United States v. Nicoll,* 664 F.2d 1308, 1314-15 (5th Cir. Unit B 1981), *cert.  denied*, 457 U.S. 11, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982), *rev'd on  other grounds*, *United States v. Henry*, 749 F.2d 203 (5th Cir.1984).

The evidence reveals that ATF agents contacted individuals suspected of being involved in home invasions.  Informed by these individuals that large amounts of narcotics could be stolen in a home invasion, defendants voluntarily agreed to participate.  The defendants were involved without any instigation from the government.  They only had contact with the government agent

4

after they had already agreed to participate. The availability of defendants, their weapons, and vehicles was not the result of any governmental activity. The conduct of the government here does not approach that demonstrable level of outrageousness the case law suggests would be necessary for reversal of these defendants' convictions.

*Sentencing Entrapment* - Sentencing entrapment is the claim that "a defendant, although predisposed to commit a minor or lesser offense, is entrapped into committing a greater offense subject to greater punishment." *United States v. Stuart*, 923 F.2d 607, 614 (8th Cir.), *cert. denied*, 499 U.S. 967 (1991). *See United States v. Staufer*, 38 F.3d 1103,1106 (9th Cir.1994) (citing the definition in *Stuart*); *see generally Defending a Sentence: The Judicial Establishment of Sentencing Entrapment and Sentencing Manipulation Defenses*, 145 U. Pa. L. Rev. 1359 (May 1997). The focus of sentencing entrapment is the predisposition of the defendant to commit the greater offense. The government alleges that this issue was not properly preserved on appeal. Notwithstanding the government's position, defendants' claim must fail as a matter of law because this Circuit has rejected sentence entrapment as a viable defense. *See United States v. Miller*, 71 F.3d 813 (11th Cir.), *cert. denied*, ___ U.S. ___, 117 S.Ct. 123 (1996).

*Sentencing Factor Manipulation* - While sentencing entrapment focuses on the defendant's predisposition, sentencing factor manipulation focuses on the government's conduct. "It requires us to consider whether the manipulation inherent in a sting operation, even if insufficiently oppressive to support an entrapment defense, ... or due process claim, ... must sometimes be filtered out of the sentencing calculus." *United States v. Connell*, 960 F.2d 191,194 (1st Cir. 1992) (coining the phrase). Such a claim points to "the opportunities that the sentencing guidelines pose for

5

prosecutors to gerrymander the district court's sentencing options and thus, defendant's sentences." *Connell*, 960 F.2d at 194.

Several circuits have recognized some form of sentencing manipulation as an arguably valid defense, *see United States v. Gibbens*, 25 F.3d 28 (1st Cir. 1994); *United States v. Jones*, 18 F.3d 1145, 1153 (4th Cir. 1994); and *United States v*. Shephard, 4 F.3d 647, 649 (8th Cir. 1993), while the Tenth Circuit analyzes such claims under an outrageous conduct standard, *see United States v. Lacey,* 86 F.3d 956 (10th Cir.), *cert. denied*, ___ U.S. ___ , 117 S.Ct. 331 (1996); and the Seventh Circuit has rejected the defense outright, *see United States v. Garcia*, 79 F.3d 74, 75 (7th Cir.), *cert denied*, ___ U.S. ___, 117 S.Ct. 158 (1996). No court of appeals has overturned a conviction or departed downward on the basis of a sentencing manipulation claim. This Court has not addressed this theory directly, the only reference to the defense being made in *United States v. Miller* where we merely observed that defendant failed to make clear the distinction between his sentencing entrapment and sentencing manipulation arguments in the context of that case. 71 F.3d 813, 818 & n.2 . It does not appear from the record that this basis for a downward departure from sentencing was raised below, but even assuming it were properly before us on this appeal, defendants would not prevail. The fact that the government's fictitious reverse sting operation involved a large quantity of drugs does not amount to the type of manipulative governmental conduct warranting a downward departure in sentencing.

*Amount of Drugs Used for Sentencing* - The defendants argue that because there was no actual cocaine involved, their sentences were invalid under 21 U.S.C. § 841(b), a penalty provision that refers to offenses involving five kilograms of a mixture or substance containing a detectable amount of cocaine. They argue the penalty applies only to substantive offenses and not to

6

conspiracy offenses. Their argument is defeated by the plain language of the conspiracy statute 21 U.S.C. § 846, which provides that "[a]ny person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy...." We need not heed defendants' suggestion to consult the legislative history of the penalty provisions of section 841(b) where the language of the statute clearly expresses the legislative intent. *See United States v. Rush*, 874 F.2d 1513, 1514 (11th Cir.1989).

### III

Guillermo Diaz challenges his conviction and sentence for using and carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The government concedes that Diaz cannot be convicted under section 924(c)'s use prong after *United States v. Bailey*, ___ U.S.___, 116 S. Ct. 501 (1995), and its progeny, but the question presented here is whether the conviction is valid under the statute's "carry" prong. While we have held that a firearm in a glove compartment of an automobile has been "carried," *see United States v. Farris*, 77 F.3d 391, 395 (11th Cir.), *cert. denied*, 117 S. Ct. 241 (1996), we have not addressed the issue whether a firearm transported in the trunk would be "carried" under the statute. The other circuits are split on this issue. The First Circuit, faced with virtually identical facts, determined that firearms transported in the trunk of a vehicle to a drug deal were carried for purposes of section 924(c). *United States v. Cleveland*, 106 F.3d 1056 (1st Cir. 1996), *cert. granted*, __U. S. ___, 118 S.Ct. 621 (Dec. 12, 1997). As the court observed in *Cleveland*, the Fifth and Eighth Circuits, "while not explicitly deciding the issue one way or the other, appear to be leaning toward adopting the same approach," *see, e.g., United States v. Pineda-Ortuno*, 952 F.2d 98, 103-04 (5th Cir. )(a pre-*Bailey*

7

case holding that the circuit's cases requiring showing that gun within defendant's reach during commission of drug offense did not apply when gun "carried" in a vehicle), *cert. denied sub nom., United States v. Ramirez- Carranza*, 504 U.S. 928 (1992); *United States v. Fike,* 82 F.3d 1315, 1327-28 (5th Cir. 1996) (post-*Bailey* case upholding defendant's conviction under section 924(c)(1) for "carrying" gun that was within his reach in car but not stating that accessibility was requirement); and *United States v. Willis*, 89 F.3d 1371, 1377-79 (8th Cir.), (relying on pre-*Bailey* case law to hold that transporting firearm in passenger compartment of vehicle satisfies "carry" prong of section 924(c)(1) but not addressing weapon's accessibility), *cert. denied*, ___ U.S. ___, 117 S.Ct. 273 (1996); *Cleveland,* 106 F.3d at 1067. The Second, Sixth, and Ninth Circuits have held to the contrary, requiring that the firearms be immediately accessible. *See United States v. Giraldo,* 80 F.3d 667, 676-78, *cert. denied*, ___ U.S. ___,117 S.Ct. 135 (1996); *United States v. Riascos-Suarez*, 73 F.3d 616, 623-24 (6th Cir.), *cert. denied*, ___ U.S. ___, 117 S.Ct. 136 (1996); *United States v. Staples*, 85 F.3d 461, 464 (9th Cir.), *cert. denied*, ___ U.S. ___, 117 S.Ct. 318 (1996).

While this question is presently pending before the Supreme Court in two consolidated cases *United States v. Cleveland,* 106 F.3d 1056 (1st Cir. 1996) (firearm in trunk of vehicle), and *United States v. Muscarello*, 106 F.3d 636 (5th Cir. 1996) (firearm in glove compartment), *cert. granted*, ___ U.S. ___, 118 S.Ct. 621 (Dec. 12, 1997), we are inclined to follow the lead of the First, Fifth and Eighth Circuits until a decision from the Supreme Court to the contrary. Turning to the facts of this case, we hold that where the evidence established that defendant transferred the firearms to the trunk of the car of the confidential informant and then traveled in the car to meet the co-defendants prior to the planned invasion, the section 924(c) carrying requirement is met.

8

As for Diaz's attack on witnesses' testimony, any weaknesses in the testimony of the confidential informant or contradictions in the testimony of the agents that testified involve credibility decisions that are matters for the jury. *See United States v. Perez-Tosta*, 36 F.3d 1552,1557 n.3 (11th Cir. 1994), *cert. denied sub nom. Perez-Aguilera v. United States*, 515 U.S. 1145 (1995). The jury's verdict indicates it found these witnesses credible.

Finally, Diaz asserts the court applied the wrong quantity of drugs in calculating his sentence. He stated that he was relying upon the evidence that had been presented at co-defendant Mendez's sentencing proceeding wherein the issue of drug quantity had been fully litigated. Defendant has failed to include the transcript of Mendez's sentencing proceeding in this record, and we are therefore unable to address the evidence adduced at that proceeding.

**IV**

Defendant Jose Manuel Duran claims that because neither the government nor the court complied with the procedural requirements of 21 U.S.C. § 851, he was erroneously sentenced to mandatory life imprisonment. Duran was sentenced to life imprisonment under 21 U.S.C. § 841(b)(1)(A), which provides in relevant part that a defendant who commits a violation involving 5 kilograms or more of cocaine or 1000 kilograms of marijuana after two or more prior convictions for a felony drug offense have become final shall be sentenced to a mandatory term of life imprisonment without release.

The procedure for establishing prior convictions in 21 U.S.C. § 851 requires that the United States Attorney file an information with the court and serve a copy to defendant or his counsel stating in writing the previous convictions to be relied upon. § 851(a)(1). Once the information is filed, the court shall, after conviction but before sentencing, inquire of the defendant whether he

9

affirms or denies that he had been previously convicted as alleged in the information and inform defendant that any challenge to a prior conviction must be made before sentence is imposed. § 851(b). To challenge the validity of any conviction, defendant must file a written response to the information. Once the response is filed and served on the government, the court must hold a hearing to determine any issues raised by the response that would except the defendant from any increased punishment. The United States attorney has the burden of proof beyond a reasonable doubt on any issue of fact, and at the request of either party, the court shall enter findings of fact and conclusions of law. § 851(c)(1).

If defendant claims that a conviction alleged in the information was obtained unconstitutionally, he shall "set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence on any issue of fact raised by the response." Any challenge to a prior conviction, not raised by response to the information before an increased sentence is imposed in reliance thereon, shall be waived, unless good cause is shown for the failure to make a timely challenge. § 851(c)(2). The language of the statute is mandatory, requiring strict compliance with the procedural requirements of sections 851(a) and (b). *See United States v. Weaver*, 905 F.2d 1466, 1481 (11th Cir. 1990), *cert. denied sub nom. Sikes v. United States*, 498 U.S. 1091 (1991).

Rather than filing an information with the court, the government's amended notice of enhancement consisted of a summary listing of seven convictions – not all of which were prior felony drug offenses as the statute requires. In the notice, the government referred to a discovery response that included copies of the informations filed in the five Illinois cases listed . No information was included with respect to the two Florida cases.

10

In his Objections to the Presentence Investigation Report, Duran challenged the notice as defective on its face and argued that one of the underlying convictions upon which the government relied was based on a constitutionally invalid plea. Specifically, Duran argued that he did not have effective assistance of counsel at the time of the plea; there was an insufficient factual basis for the no contest plea; and that he is actually innocent of the charges so that maintenance of the plea is a manifest injustice.

At the sentencing hearing, defense counsel, the government and the court all expressed some confusion or doubt about the appropriate procedure in the face of such a challenge. Defense counsel expressed his intention to attack both the Illinois and the Florida convictions as constitutionally infirm and requested a continuance to develop the facts.. The government objected to such an attack, declaring that it amounted to a collateral attack provided for under 28 U.S.C. § 2254, and that a federal court cannot review a state conviction within these sentencing proceedings. The district court agreed.

Contrary to the understanding of the government and the court, if the defendant files a written response claiming that a conviction is invalid, a hearing like that contemplated under section 2254 is exactly what section 851 requires:

> If the person ... claims that any conviction alleged is invalid, he shall file a written response to the information.... The court shall hold a hearing to determine any issues raised by the response which could except the person from increased punishment. ... The hearing shall be before the court without a jury and either party may introduce evidence.
> . . . .
> A person claiming that a conviction alleged in the information was obtained in violation of the Constitution of the United States shall set forth his claim, and the factual basis therefor, with particularity in his response to the information. The person shall have the burden of proof by a preponderance of the evidence on any issue of fact raised by the response.

11

21 U.S.C. § 851(c)(1) & (2).

The court allowed defendant to testify regarding his plea despite its belief that no hearing was required. Defendant testified that, though he was appointed counsel to represent him, he had no opportunity to discuss with his attorney the facts that would support the offense for which he was charged, nor the consequences of his plea of no contest. The court determined that defendant had not proven by a preponderance of the evidence the fact that his plea was not made with proper advice of counsel, and that the judgment of guilty appeared to be proper on its face. The government argues that any procedural flaws are harmless where defendant was aware of the convictions upon which the government relied, and was permitted to challenge them in court prior to being sentenced. We think it appropriate, however, to vacate the sentence and remand to the district court so that the proper papers can be filed, and a hearing held in accordance with what the statute requires.

## V.

Miguel Sanchez alleges the district court erred in failing to depart downward from his sentence based on the following factors: his age and maturity at the time the prior offenses were committed, the fact that the crimes were committed within two years of each other, and that his offense level was augmented by the career offender provision. *See United States v. Shoupe*, 988 F.2d 440 (3d Cir. 1993) (downward departure justified under section 4A1.3 when a defendant's criminal history category significantly over-represents the seriousness of the defendant's past conduct and future threat to society). The court acknowledged that a 30-year sentence was harsh but found that the two prior felonies were serious and that departure in this case would not be appropriate. Absent an allegation that the court erred in concluding it lacked authority to depart

downward, we are without grounds to review the district court's refusal to depart downward. *See United States v. Hadaway*, 998 F.2d 917, 919 (11th Cir. 1993). Regarding Sanchez's claim that his prior conspiracy offenses should not have been counted toward his Career Offender status, it is not clear from the record that these offenses were part of the calculation, but if they were, such use would be valid. *See United States v. Weir,* 51 F.3d 1031, 1032 (11th Cir. 1995), *cert. denied*, ___ U.S. ___, 116 S.Ct. 928 (1996). Sanchez's argument that his sentence constitutes cruel and unusual punishment was not raised in district court and we decline to consider it here.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**