[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 07, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-12947
Non-Argument Calendar

_____

D. C. Docket No. 06-20464-CR-RWG-MGC

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERTO ALVAREZ,
a.k.a. Roberto Saavedra,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(July 7, 2008)**

Before TJOFLAT, BLACK and CARNES, Circuit Judges.

PER CURIAM:

Roberto Saavedra Alvarez appeals his conviction as to count one of the

indictment against him, conspiracy to possess with intent to distribute more than five kilograms of cocaine in violation of 21 U.S.C. § 846. Alvarez contends that the district court plainly erred by: (1) failing to sua sponte declare a mistrial on count one after Jose Gonzalez, a government witness and confidential informant, testified at trial that he knew Alvarez had a criminal record; (2) failing to sua sponte enter a post-verdict judgment of acquittal on count one on the ground that the jury's guilty verdict rested on the harmfully prejudicial exchange between the government and Gonzalez regarding Alvarez's criminal record; and (3) failing to sua sponte dismiss the indictment on the ground that the government was over-involved in the particular reverse sting operation used in this case and thus violated Alvarez's Fifth Amendment due process rights.

Because Alvarez did not raise any of these arguments during his trial, we review only for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). Under plain error review, "[a]n appellate court may not correct an error the defendant failed to raise in the district court unless there is: (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation marks and citations omitted). An error is

"plain" if "it is obvious and clear under current law."  United States v. Eckhardt, 466 F.3d 938, 948 (11th Cir. 2006), cert. denied, 127 S. Ct. 1305 (2007).

Alvarez first contends that the district court plainly erred by failing to sua sponte order a mistrial after Gonzalez testified that he knew Alvarez had a criminal record.  "[A] trial judge has discretion to grant a mistrial since [she] is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." United States v. Newsome, 475 F.3d 1221, 1227 (11th Cir. 2007) (quotation marks and citation omitted).

If the district court issues a curative instruction, "we will reverse only if the evidence is so highly prejudicial as to be incurable by the trial court's admonition." See United States v. Trujillo, 146 F.3d 838, 845 (11th Cir. 1998) (quotation marks and citation omitted) (holding that the district court's curative instruction cured any potential prejudice caused by a witness's testimony that the drug trafficking defendant previously had been involved in the drug trade and incarcerated in Cuba); see also United States v. Mejia, 82 F.3d 1032, 1038 n.7 (11th Cir. 1996) (holding that witness's testimony that he knew defendant from "past dealings" was not grounds for a new trial where court quickly struck the response and instructed the jury to disregard it).  In making that determination, we presume that the jury followed the district court's curative instruction.  United States v. Ramirez, 426

3

F.3d 1344, 1352 (11th Cir. 2005).

At trial, the government played for the jury without objection statements made by Alvarez admitting his prior involvement in drug smuggling, which lessened the likelihood of undue prejudice from Gonzalez's statement that Alvarez had a criminal record. In addition, following Gonzalez's statement, the district court sustained Alvarez's objection and instructed the jury that it was to "disregard both the question and the answer, any reference to criminal records that were before the jury." We presume that the jury followed this instruction, see Ramirez, 426 F.3d at 1352, and we conclude that it cured any potential prejudice caused by the mention of Alvarez's criminal record, see Trujillo, 146 F.3d at 845; Mejia, 82 F.3d at 1038 n.7. Accordingly, the district court did not err, much less plainly err, by failing to sua sponte declare a mistrial. See also United States v. Perez, 30 F.3d 1407, 1411 (11th Cir. 1994) ("When a court gives a direct and explicit curative instruction regarding improper testimony, it supports the court's decision not to grant a mistrial by decreasing the possibility of undue prejudice.").

Alvarez next contends that the district court plainly erred by failing to sua sponte enter a post-verdict judgment of acquittal on the count one conspiracy charge. According to Alvarez, when the district court learned that the jury had acquitted him on counts two, three, and four of the indictment, the court should

have concluded that the guilty verdict on count one rested on Gonzalez's statement that Alvarez had a criminal record. To support a conspiracy conviction, the government must establish beyond a reasonable doubt: (1) the existence of an agreement between the defendant and one or more persons; (2) the object of which is to commit an unlawful act. United States v. Garcia, 405 F.3d 1260, 1269 (11th Cir. 2005). It is unlawful to possess with intent to distribute a controlled substance. 21 U.S.C. § 841(a)(1).

Alvarez's contention is without merit. Alvarez's counsel conceded at trial that the evidence was sufficient to support a conviction on the conspiracy charge in count one, stating that "the defendant would agree, there is sufficient evidence taken in the light most favorable to the Government to establish that an agreement was entered into and that that agreement was for the elicit purposes, which are stated in the indictment." He continued, "I don't think there is any legal question." Moreover, the record does not support his argument that the jury's acquittal on the other three counts must have meant that the jury found him guilty on the conspiracy charge simply because of Gonzalez's brief statement that Alvarez had a criminal record, especially in light of the court's curative instruction. See Ramirez, 426 F.3d at 1352 ("A jury is presumed to follow the instructions given to it by the district judge."). The district court did not err by failing to sua sponte grant

Alvarez a judgment of acquittal on count one.

Finally, Alvarez contends that the district court plainly erred by failing to sua sponte dismiss the indictment on the ground that the government's sting operation violated his right to due process. Alvarez argues that the government was overinvolved in the sting operation that led to his arrest and conviction because government agents: (1) created the entire scenario for a fictitious robbery of drugs, (2) from "bad people" rather than innocent civilians, (3) that was initiated by an informant who is a friend of the lead defendant, and (4) provided crucial assistance to commit the crime, such as using the informant to transport the suspects to meetings and providing a vehicle to the suspects. According to Alvarez, once the district court heard all the evidence, the court should have realized that the sting operation violated Alvarez's due process rights and sua sponte dismissed the indictment. The district court's failure to do so, he argues, was plain error.

"We have recognized that government infiltration of criminal activity is a legitimate and permissible means of investigation and frequently necessitates the government agent's supplying something of value to the criminal." United States v. Puett, 735 F.2d 1331, 1335 (11th Cir. 1984). "Government involvement in criminal activity constitutes a due process violation only where it violates

6

'fundamental fairness, shocking to the universal cause of justice.'" United States

v. Gianni, 678 F.2d 956, 960 (11th Cir. 1982) (citations omitted).  We have

repeatedly rejected "challenges to the 'reverse sting' method of police

investigation."  United States v. Sanchez, 138 F.3d 1410, 1413 (11th Cir. 1998).

The Supreme Court, however, has recognized the possibility that "the conduct of

law enforcement agents [may be] so outrageous that due process principles would

absolutely bar the government from invoking judicial processes to obtain a

conviction."  United States v. Russell, 411 U.S. 423, 431–32, 93 S. Ct. 1637, 1643

(1973).  "One example of such outrageous conduct is when the government

instigates the criminal activity, provides the entire means for its execution, and

runs the entire operation with only meager assistance from the defendant."  Puett,

735 F.2d at 1335.

This Court has found the conduct of the government did not "approach that

demonstrable level of outrageousness the case law suggests would be necessary for

reversal of the[] defendants' convictions" where:  (1) federal agents contacted

individuals suspected of being involved in home invasions; (2) the defendant were

then informed by these individuals that large amounts of drugs could be stolen in a

home invasion; (3) the defendants voluntarily agreed to participate; (4) the

defendants were involved without any investigation from the government; (5) they

7

had contact with the government only after they had already agreed to participate; and (5) the availability of the defendants, their weapons, and vehicles was not the result of any governmental activity. See Sanchez, 138 F.3d at 1413–14.

The district court did not err by failing to sua sponte dismiss the indictment. First, Alvarez was not initially contacted by a government agent to participate in the conspiracy. Instead, Gonzalez testified that, while he was acting as a confidential informant, he contacted codefendant Lamar to allegedly buy cocaine. After Gonzalez proposed a cocaine robbery to Lamar, Lamar told Gonzalez that he would contact other individuals who had experience in that area. Lamar then contacted Alvarez. Second, Alvarez voluntarily chose to participate in the plan. Gonzalez testified that Lamar told Alvarez about the planned robbery, and Lamar immediately informed Gonzalez that Alvarez had agreed to participate. Third, Alvarez had no contact with the government until he had already informed Lamar that he wished to participate. Fourth, Alvarez recruited another individual into the scheme. Finally, the government did not induce Alvarez into participating in the scheme, but only offered a vehicle after Alvarez had already agreed to participate.

Accordingly, the evidence shows that the government did not instigate the criminal activity as it related to Alvarez, provide the entire means for the completion of the crime—particularly in light of the fact that Alvarez himself acted

8

as a recruiter—or run the operation with only "meager assistance" from Alvarez.

See Puett, 735 F.2d at 1335. Thus, these facts do not rise to the level of outrageous conduct required to warrant a reversal of Alvarez's conviction. See Sanchez, 138 F.3d at 1413–14.

**AFFIRMED.**