# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.

JUAN PEDRO BARRAZA-LOPEZ,
        *Defendant-Appellant.*

No. 10-50280

D.C. No.
3:04-cr-01962-L-1

OPINION

Appeal from the United States District Court
for the Southern District of California
M. James Lorenz, District Judge, Presiding

Argued and Submitted
May 3, 2011—Pasadena, California

Filed September 28, 2011

Before: Harry Pregerson, Raymond C. Fisher and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Fisher

18543

**COUNSEL**

Kristi A. Hughes, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Laura E. Duffy, United States Attorney, Bruce R. Castetter, Assistant U.S. Attorney and Aaron B. Clark (argued), Assistant U.S. Attorney, San Diego, California, for the plaintiff-appellee.

**OPINION**

FISHER, Circuit Judge:

We hold that the Speedy Trial Act's 30-day preindictment time limit, which ordinarily runs from the date of the defendant's initial arrest, restarts when the underlying complaint is dismissed without prejudice and the charges are later refiled.

**BACKGROUND**

On July 2, 2004, local police arrested Juan Pedro Barraza-Lopez for public drunkenness and discovered he was "in this country illegally." Barraza-Lopez was then transferred to the custody of the Department of Homeland Security (DHS) to await prosecution for illegal reentry under 8 U.S.C. § 1326. On July 4, however, Barraza-Lopez escaped from DHS custody through a hole in a barracks yard fence and returned to Mexico. A few weeks later, the government obtained an indictment charging Barraza-Lopez with (1) being an illegal alien previously removed from the United States who was found in the United States on July 3, 2004 (the "found-in date" for this § 1326 offense); and (2) escape from federal custody, in violation of 18 U.S.C. § 751(a).

In June 2007, Barraza-Lopez again reentered the United States. He was arrested and taken into state custody shortly after his reentry. On June 7, 2007, while Barraza-Lopez was in state custody, immigration officials lodged a detainer against him, requesting notification prior to his release. Barraza-Lopez was then convicted on state charges and confined in state prison. Upon his release on November 12, 2008, DHS took Barraza-Lopez into federal custody. Barraza-Lopez admitted at that time that he had previously escaped from federal custody and had returned to Mexico between his escape and his latest reentry, thus alerting the government that he had committed a second illegal reentry separate from the reentry for which he was detained in 2004.[1]

The next day, the government filed a complaint again charging Barraza-Lopez with illegal reentry, this time with a

---

[1]Under *United States v. Meza-Villarello*, 602 F.2d 209, 211 (9th Cir. 1979) (per curiam), "the government [is] required to prove that the defendant ha[s] been outside the United States after each conviction before again prosecuting him for being 'found' within the United States in violation of 8 U.S.C. § 1326."

found-in date of November 12, 2008. The parties agree that Barraza-Lopez's second illegal reentry, which the government had just learned of, was the basis for this charge. Later the same day, however, Barraza-Lopez was arraigned not on the complaint but rather on the original 2004 indictment, which charged him with (1) his 2004 illegal reentry, but *not* his second, post-escape reentry; and (2) escape. The complaint containing the second illegal reentry charge was dismissed without prejudice on the government's motion.

In September 2009, after the case was set for trial, the government obtained a second superseding indictment charging Barraza-Lopez with (1) the 2004 illegal reentry; (2) escape; and (3) a second count of illegal reentry with a found-in date of June 7, 2007, the day federal authorities had lodged a detainer on Barraza-Lopez while he was in state custody.[2] The parties agree that count three of the second superseding indictment reinstated the illegal reentry charge that was dismissed in November 2008, although the government altered the found-in date for this charge. The government explains — and Barraza-Lopez does not dispute — that it reinstated the second illegal reentry charge only after "obtain[ing] independent evidence that Barraza had left the United States" between his escape and his later reentry, to corroborate Barraza-Lopez's admission.

Barraza-Lopez moved to dismiss count three, the second illegal reentry charge, as violating the 30-day preindictment time limit imposed by the Speedy Trial Act, 18 U.S.C. § 3161(b). He argued that the 10-month delay between his November 2008 arrest on this charge and the September 2009 second superseding indictment violated the 30-day deadline, even though the charge was dismissed and refiled in the interim. After the district court denied his motion, Barraza-

---

[2]The government had already once superseded the 2004 indictment in the interim to reflect intervening changes in law, without adding or removing any charges.

Lopez pled guilty to all three counts in the second superseding indictment, but preserved his right to appeal the denial of his § 3161(b) motion. He now appeals his conviction on the second illegal reentry offense, challenging the denial of that motion.[3] Reviewing the district court's factual findings for clear error and its legal conclusions de novo, *see United States v. Duque*, 62 F.3d 1146, 1149 (9th Cir. 1995), we affirm.

## DISCUSSION

## I.

**[1]** Under the Speedy Trial Act, "[a]ny information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges." 18 U.S.C. § 3161(b). If no information or indictment is filed within the requisite 30 days, the charges contained in the underlying complaint must be dismissed, although, in accordance with statutory standards, the dismissal may be without prejudice to refiling the charge. *See id.* § 3162(a)(1) ("If, in the case of any individual against whom a complaint is filed charging such individual with an offense, no indictment or information is filed within the time limit required by section 3161(b) . . . , such charge against that individual contained in such complaint shall be dismissed or otherwise dropped.").

**[2]** Section 3161(d)(1) applies, however, when charges are dismissed and refiled. It provides:

> If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed

---

[3]We address the other issues Barraza-Lopez raises on appeal in a memorandum disposition filed concurrently with this opinion.

or otherwise dropped, and thereafter a complaint is filed against such defendant or individual charging him with the same offense or an offense based on the same conduct or arising from the same criminal episode, or an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct or arising from the same criminal episode, the provisions of subsections (b) and (c) of this section shall be applicable with respect to such subsequent complaint, indictment, or information, as the case may be.

*Id.* § 3161(d)(1).

The text of § 3161(d)(1) can reasonably be interpreted in two ways. It can "be read to provide that, when a defendant is arrested, and subsequently indicted, 'the provisions of (§ 3161(b)) . . . shall (apply to) such subsequent . . . indictment,' *id.* § 3161(d)(1), thus rendering the indictment untimely unless filed within thirty days of the original arrest." *United States v. Krynicki*, 689 F.2d 289, 293 (1st Cir. 1982); *see also United States v. Bittle*, 699 F.2d 1201, 1205 (D.C. Cir. 1983) (observing that the provision "can be read to require that indictments filed after the dismissal of initial charges must be returned within thirty days of the original arrest"). If this interpretation of § 3161(d)(1) is correct, then in this case the 30-day clock on the second illegal reentry charge began running in November 2008, when Barraza-Lopez was taken into custody on that charge, and the September 2009 second superseding indictment missed the statutory deadline by many months.

**[3]** Alternatively, § 3161(d)(1) can be read to restart the 30-day clock when charges contained in a complaint are dismissed and refiled. Under this interpretation of the statute, when "any charge contained in a complaint filed against an individual is dismissed or otherwise dropped, and thereafter . . . an information or indictment is filed charging such defen-

dant with the same offense," 18 U.S.C. § 3161(d)(1), the 30-day clock that ordinarily runs "from the date on which such individual was arrested or served with a summons," *id.* § 3161(b), instead runs "with respect to [the] subsequent complaint, indictment, or information," *id.* § 3161(d)(1). In other words, when a charge is dismissed and proceedings are reopened by the charge's refiling, the subsequent complaint, indictment or information substitutes for the arrest or service of summons that ordinarily starts the 30-day clock, and the 30-day period runs from the date on which the subsequent complaint, indictment or information is filed.[4] If this interpretation of the statute is correct, then in this case the 30-day clock ran from the date the second illegal reentry charge was reinstated in the second superseding indictment, not from the November 2008 arrest. Because the second superseding indictment was filed on the same day the clock began to run, the 30-day time limit was satisfied.

**[4]** We agree with the government, and with the numerous other circuits that have addressed the issue, that the latter reading of the statute is correct. *See United States v. Williams*, 408 F.3d 1073, 1076 (8th Cir. 2005) ("The well-settled rule in this and other circuits . . . [is] that when the government drops a complaint but then later brings a new complaint or indictment on the same charge, the 30-day period runs from the second complaint or indictment." (alteration in original)

---

[4]In this case, the government reinstated prosecution on the second illegal reentry charge by adding that charge in the second superseding indictment; there was no need to rearrest Barraza-Lopez, who was already being held on two other charges. We therefore have no occasion to decide how the 30-day time limit would operate in a case involving rearrest after dismissal of charges. Presumably, however, the time limit would run from the date of the second arrest in such a case. *See United States v. Rabb*, 680 F.2d 294, 297 (3d Cir. 1982) (holding, in a case involving dismissal of an indictment rather than a complaint, that "Congress intended that the time limits of subsection (b) . . . run anew from the date of the defendant's second *arrest or charge*, if any, and not from the date of the first arrest or charge" (emphasis added)).

(quoting *United States v. Long*, 900 F.2d 1270, 1273 (8th Cir. 1990)) (internal quotation marks and emphasis omitted)); *United States v. Gaskin*, 364 F.3d 438, 451 (2d Cir. 2004) (stating that § 3161(d)(1) "reset[s the] speedy trial clock if, after a complaint charge is dismissed against a defendant, the defendant is recharged with the same offense in a new complaint or indictment"); *United States v. May*, 771 F.2d 980, 982 (6th Cir. 1985) (per curiam) ("[T]he clear purport of [§ 3161(d)(1)] is to make the time period[ ] in [§ 3161(b)] run anew upon the issuance of a subsequent indictment; the prior filing of a complaint and arrest pursuant thereto is simply irrelevant for Speedy Trial Act purposes if the complaint is dismissed without prejudice." (footnote omitted)); *United States v. Quinteros*, 769 F.2d 968, 973 (4th Cir. 1985) ("[W]e interpret section 3161(d)(1) to allow a fresh thirty-day period between the second complaint and subsequent indictment. . . ."); *United States v. Puett*, 735 F.2d 1331, 1333-34 (11th Cir. 1984) ("The better construction of section 3161(d)(1) is that after the dismissal of the complaint, the Act's time limits run anew from the date of filing of the subsequent complaint or indictment."); *Bittle*, 699 F.2d at 1205 ("[T]he correct interpretation of section 3161(d)(1) is that after the dismissal of a complaint, the Act's time limits run anew from the date of the filing of the subsequent complaint or indictment."); *Krynicki*, 689 F.2d at 294 ("[T]his Court interpret[s] §§ 3161(b) and (d)(1) to allow the government to prosecute a defendant on an indictment returned more than thirty days after an arrest where the underlying charge in a complaint has been dismissed."). There are four persuasive reasons for adopting this interpretation of § 3161(d)(1).

First, a contrary interpretation would render § 3161(d)(1) superfluous. Section 3161(b) already establishes the general principle that an indictment must be returned within 30 days of the arrest. If § 3161(d)(1) merely confirmed that an indictment filed after dismissal of charges previously alleged in a complaint must be filed within 30 days of the initial arrest, it would do no more than restate the general rule of § 3161(b).

*Accord May*, 771 F.2d at 982; *Puett*, 735 F.2d at 1334; *Bittle*, 699 F.2d at 1205; *Krynicki*, 689 F.2d at 293. "It is a well-established principle of statutory construction that 'legislative enactments should not be construed to render their provisions mere surplusage.' " *Am. Vantage Cos. v. Table Mountain Rancheria*, 292 F.3d 1091, 1098 (9th Cir. 2002) (quoting *Dunn v. Commodity Futures Trading Comm'n*, 519 U.S. 465, 472 (1997)).

Second, our reading of § 3161(d)(1) conforms the 30-day preindictment clock to the "closely analogous" 70-day indictment-to-trial clock. *United States v. Magana-Olvera*, 917 F.2d 401, 405 (9th Cir. 1990). We have long made clear that, under § 3161(d)(1), when an indictment is dismissed on the defendant's motion, the 70-day time limit runs from the date of the new indictment reinstating prosecution, rather than from the initial indictment. *See United States v. Feldman*, 788 F.2d 544, 548 (9th Cir. 1986) (stating that under these circumstances the 70-day clock "begins anew," starting from the date of the later indictment).[5] The 30-day time limit should likewise be calculated based on the recommencement of prosecution, not the initial arrest. *See United States v. Perez*, 845 F.2d 100, 102 n.3 (5th Cir. 1988) (approving the district court's conclusion that the 70-day and 30-day clocks are analogous in operation).

Third, our interpretation of the statute harmonizes the Speedy Trial Act with the Sixth Amendment's speedy trial provision, which protects only those who face *pending* charges. *See United States v. Loud Hawk*, 474 U.S. 302, 304 (1986) ("We conclude that the time that no indictment was

---

[5]Section 3161(d) applies to any dismissal of a complaint, but only to a dismissal of an "indictment or information . . . upon motion of the defendant." 18 U.S.C. § 3161(d). When an indictment is dismissed on the government's motion, not the defendant's, and the defendant is later recharged, the Speedy Trial Act's time limits are tolled for the period between dismissal and refiling, rather than being reset. *See id.* § 3161(h)(5).

outstanding against respondents should not weigh towards respondents' speedy trial claims."); *United States v. MacDonald*, 456 U.S. 1, 7 (1982) (noting that "[i]n addition to the period after indictment, the period between arrest and indictment must be considered in evaluating a Speedy Trial Clause claim," but that "no Sixth Amendment right to a speedy trial arises until charges are pending," and that "the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges"). "Once charges are dismissed . . . the formerly accused is, at most, in the same position as any other subject of a criminal investigation." *MacDonald*, 456 U.S. at 8-9. "Certainly the knowledge of an ongoing criminal investigation will cause stress" to the uncharged wrongdoer, *id.* at 9, but this sort of anxiety is addressed by statutes of limitation. *Cf. United States v. Marion*, 404 U.S. 307, 323 (1971) ("[T]he applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges." (alterations in original) (quoting *United States v. Ewell*, 386 U.S. 116, 122 (1966)) (internal quotation marks omitted)).

Fourth, our interpretation of § 3161(d)(1) is supported by the legislative history. The Senate Judiciary Committee's section-by-section analysis of the Speedy Trial Act explains:

> [Subsection 3161(d)] allows latitude to the prosecutor to re-institute prosecution of a criminal defendant whose case has previously been dismissed on non-speedy trial grounds without having to comply with the time limits imposed by the filing of the earlier complaint. To require a prosecutor to conform to indictment and trial time limits which were set by the filing of the original complaint in order to reopen a case on the basis of new evidence would be an insurmountable burden. Thus, when subsequent complaints are brought, the time limits will begin to run from the date of the filing of the subsequent complaint.

S. Rep. No. 93-1021 (1974), *reprinted in* Anthony Partridge, Legislative History of Title I of the Speedy Trial Act of 1974 78-79 (1980). This passage states broadly that Congress meant to allow the government "latitude . . . to re-institute prosecution . . . without having to comply with the time limits imposed by the filing of the earlier complaint," to avoid placing "an insurmountable burden" on prosecutors seeking to reopen a case. Our conclusion that the Act permits the government to reinstitute prosecution of Barraza-Lopez on the second illegal reentry charge is consistent with this congressional objective.[6] *Accord May*, 771 F.2d at 982-83; *Quinteros*, 769 F.2d at 971-72; *Puett*, 735 F.2d at 1334; *Bittle*, 699 F.2d at 1205; *Krynicki*, 689 F.2d at 293-94.

**[5]** We therefore hold that when a charge alleged in a complaint is dismissed without prejudice and is then reinstated in a later complaint, indictment or information, the 30-day clock runs anew from the date the charge is refiled.[7]

## II.

*United States v. Palomba*, 31 F.3d 1456 (9th Cir. 1994), is not to the contrary. In *Palomba*, "a complaint was filed . . . charging [defendant] Palomba with making false statements to a federal agency, mail fraud and conspiracy." *Id.* at 1459. Palomba was arrested based on the complaint and was then indicted, but the indictment omitted the mail fraud charge. *See id.* Three months later, however, the government obtained a superseding indictment that added two counts of mail fraud. *Id.* at 1460. We held that "the superseding indictment charged

---

[6]Although not necessary to our conclusion, it is significant that the government reinstated the second illegal reentry charge "on the basis of new evidence," a situation explicitly contemplated by the legislative history. The government refiled this charge only after it uncovered independent evidence corroborating Barraza-Lopez's admission that he left the United States after his escape. Allowing the government to refile the charge under these circumstances clearly accords with congressional intent.

[7]There is a good faith qualifier, as discussed in Part III.

Palomba in an untimely manner with an offense which was contained in the complaint but which was not preserved against Section 3162(a)(1) dismissal . . . by inclusion in the timely original indictment." *Id.* at 1464.

In *Palomba*, we simply recognized the general rule, under §§ 3161(b) and 3162(a), that if the government does not follow up on pending charges by obtaining an indictment within 30 days of the arrest, the charges must be dismissed. We did not consider the circumstance specifically addressed in § 3161(d)(1), the provision that controls when a complaint is filed and is then "dismissed or otherwise dropped" and the same charges are later refiled, with no charges pending in the interim.

Barraza-Lopez nonetheless argues that in *Palomba* the charges in the complaint *were* "dismissed or otherwise dropped" within the meaning of § 3161(d)(1), and thus that *Palomba* controls even though it did not address § 3161(d)(1) explicitly. But this argument assumes that § 3161(d)(1) merely reiterates the rules of §§ 3161(b) and 3162(a), and thus that *Palomba* — which addressed only the latter provisions — applies equally when a complaint is formally dismissed, a circumstance controlled by § 3161(d)(1). As discussed above, if § 3161(d)(1) is to have any independent meaning, the Act must distinguish between charges "dropped" in the sense that they are not pursued, due to the government's failure to indict on a pending complaint (a circumstance addressed in §§ 3161(b) and § 3162(a)), and charges affirmatively and explicitly dropped, as when a complaint is dismissed (addressed in § 3161(d)(1)). *Palomba*, which addressed only the former situation, is inapplicable here.

## III.

We are mindful of the possibility that the government may abuse its latitude to reinstitute prosecution "by dismissing charges when time limits start to run, and then re-filing them

later to start a new clock." It is true that § 3161(d)(1) allows the government to control the clock's restarting under some circumstances. But the need to guard against prosecutorial abuse must be balanced against "the interest in allowing the Government to proceed cautiously and deliberately before making a final decision to prosecute." *MacDonald*, 456 U.S. at 11 (Stevens, J., concurring). Imposing an absolute 30-day arrest-to-indictment time limit might encourage the government to press forward on pending charges when it would prefer to dismiss the complaint to conduct further investigation.

Moreover, our interpretation of § 3161(d)(1) does not give the government unbounded power to restart the 30-day clock. The potential for abuse "by a prosecutor continually dismissing prior complaints . . . can be remedied by the district court's dismissing of the [initial] complaint with prejudice." *May*, 771 F.2d at 983 n.3. Dismissal with prejudice may also be appropriate when the dismissal results from the government's carelessness. *Cf.* S. Rep. No. 93-1021 (noting that dismissal with prejudice allows a district court to prevent reindictment "after a carelessly drawn indictment has been dismissed").

Our holding thus allows district courts to curb abusive behavior or sanction prosecutorial carelessness, while giving the government appropriate latitude to manage its charging decisions. This is the balance Congress envisioned. *Cf.* 18 U.S.C. § 3162(a)(1) (listing factors the district court must consider "[i]n determining whether to dismiss the case with or without prejudice" when a complaint is dismissed after the 30-day time limit expires).

### CONCLUSION

**[6]** When charges in a complaint are dismissed without prejudice and are later refiled, § 3161(b)'s 30-day clock runs anew from the filing of the "subsequent complaint, indictment, or information." *Id.* § 3161(d)(1). In this case, the 30-

day clock both started and stopped upon the filing of the second superseding indictment, which reinstated the dismissed illegal reentry charge. There was no violation of § 3161(b), and the district court properly denied Barraza-Lopez's motion to dismiss count three of the second superseding indictment.

**AFFIRMED.**