[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 16-16647
Non-Argument Calendar
_____

D.C. Docket No. 3:16-cr-00003-TCB-RGV-14

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

KEWANDA LOVE,

Defendant - Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(September 27, 2017)

Before JORDAN, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Kewanda Love appeals her 60-month sentence imposed after she pled guilty to attempting to distribute methamphetamine and to extortion under the Hobbs Act. Love requests that we vacate her sentence because it is both procedurally and substantively unreasonable. After careful review, we affirm Love's sentence and remand to the district court for the limited purpose of correcting a clerical error in the judgment.

## I.    FACTUAL BACKGROUND

### A.    Love's Criminal Offense

Love, a corrections officer with the Georgia Department of Corrections, was arrested in a reverse sting operation after she transported seven kilograms of a substance that she believed to be methamphetamine. The reverse sting operation was conducted by federal law enforcement to target corrections officers willing to facilitate drug trafficking.

Although Love had no previous involvement transporting drugs, she agreed to assist a person who she believed was a high-level drug trafficker in transporting methamphetamine. In fact, the person was a confidential human source (CHS) working with federal law enforcement. Love assisted the CHS by twice participating in the transport of what she believed to be methamphetamine while wearing her corrections officer uniform. Before each transaction, Love had the opportunity to back out, but decided to participate because she needed the money.

In the first transaction, Love and another corrections officer met the CHS in a parking lot in Locust Grove, Georgia. When the two officers entered the CHS's vehicle, he paid Love $1,500, gave her a backpack containing a substance that she believed was methamphetamine, and directed the officers to deliver it to another vehicle located in Griffin, Georgia. Love and the other officer delivered the backpack as directed.

In the second transaction, Love and two other corrections officers met the CHS in Locust Grove. When the officers entered the CHS's vehicle, he paid Love $1,500 and gave a backpack containing a substance that Love believed to be methamphetamine to one of the other corrections officers. Love and the other officers delivered the backpack according to the CHS's directions. In both transactions, Love wore her uniform because she was told and believed that doing so would protect the drug deals from local law enforcement.

After federal law enforcement completed a number of similar reverse sting operations with other corrections officers, Love and dozens of other officers were indicted. Love was charged by a grand jury with two counts of attempting to distribute methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), as well as 18 U.S.C.§ 2, and two counts of Hobbs Act extortion for accepting bribes, in violation of 18 U.S.C. § 1951(a).

3

Love pled guilty to the four charged offenses without a plea agreement.  At the plea hearing, the government described the offenses as involving Love's acceptance of $3,000 to transport a total of seven kilograms of what she believed to be methamphetamine.  Love agreed that this was an accurate description of her offenses.  She also acknowledged that by pleading guilty, she was waiving her right to a jury trial.

## B.    Love's Sentencing

After Love pled guilty, the probation office prepared a presentence investigation report ("PSR").  To calculate Love's base offense level under the Sentencing Guidelines, the PSR divided her offenses into two groups: one for the drug offenses and one for the extortion offenses.  In calculating her base offense level for the drug offenses, the PSR found Love responsible for a total of seven kilograms of methamphetamine.  Based on this drug quantity, the PSR calculated a base offense level of 34.  *See* U.S.S.G § 2D1.1(c)(3).  The PSR then applied a two-level increase because Love had abused her position of trust as a corrections officer, making the offense level for the drug offenses 36.

The PSR then calculated the base offense level for the extortion offenses as 14.  *See* U.S.S.G. § 2C1.1.  The PSR applied a two-level increase for Love's accepting multiple bribes and a four-level increase for her status as a public official in a sensitive position, for a total offense level of 20.  Because the extortion

offenses were committed for purposes of facilitating the drug offenses, the PSR then adjusted the offense level for the extortion offenses to 36. *See* U.S.S.G. § 2C1.1(c)(1). The PSR then applied a three-level decrease for Love's acceptance of responsibility, making her offense level 33.

The PSR calculated that Love's offense level and criminal history category of I resulted in a recommended range of 135-168 months' imprisonment. The PSR noted that a downward departure or variance could be warranted to avoid sentencing disparities between Love's sentence and the sentences of other corrections officers who committed similar offenses.

Before sentencing, Love filed written objections challenging the PSR's calculation of her base offense level. Love asserted that the weight of the controlled substance should be zero because the government manipulated the drug weight in the reverse sting operation, and she never transported any actual methamphetamine. The district court rejected these arguments and calculated her base offense level as 34. The court found that the government had not engaged in sentencing manipulation, but indicated that it would take into account the nature of the reverse sting operation in crafting a reasonable sentence.

The district court then considered a downward adjustment for acceptance of responsibility. *See* U.S.S.G §3E1.1(a),(b). Although the government agreed that Love was entitled to a two-level downward adjustment for acceptance of

5

responsibility, it declined to move for a full three-level adjustment. The government explained that in its view Love was now frivolously contesting the type and weight of the drug involved in the offense. The court then applied a two-level decrease, resulting in an offense level of 32.

Love's offense level and criminal history category of I resulted in a guidelines range of 121-151 months' imprisonment. After the court calculated the guidelines range, the government proposed that the district court apply a downward variance of 35 percent of the low end of the range, resulting in a 78-month sentence. After considering the parties' arguments, the PSR, and the sentencing factors set forth in 18 U.S.C. § 3553(a), the court imposed a 60-month sentence. This is Love's appeal.

## II.    STANDARD OF REVIEW

On appeal, we review purely legal questions *de novo*, and a district court's application of the Sentencing Guidelines to the facts with due deference. *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004). We review a district court's factual findings for clear error and will only disturb them if left with a definite and firm conviction that a mistake has been committed. *Id.* We review the substantive reasonableness of the sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007).

### III.    ANALYSIS

Sentencing is a two-step process, requiring the district court to (1) correctly calculate the guidelines range and (2) consider the factors under 18 U.S.C. § 3553(a) to determine a reasonable sentence.  *United States v. Talley*, 431 F.3d 784, 786 (11th Cir. 2005).  Love argues that her sentence is procedurally unreasonable because the district court erred in calculating her guidelines range and substantively unreasonable because the court improperly weighed the § 3553(a) factors.  For the reasons that follow, we hold that the district court did not abuse its discretion in sentencing Love.

**A.    The District Court Did Not Abuse Its Discretion in Calculating Love's Guidelines Range.**

Love argues that her sentence is procedurally unreasonable because the district court erred in calculating her guidelines range by treating her offenses as involving seven kilograms of methamphetamine and by failing to give her an additional one-point reduction for acceptance of responsibility.  We consider these arguments in turn.

**1.    The District Court Used the Proper Drug Quantity.**

Love argues that the district court miscalculated her guidelines range because it improperly treated her offenses as involving seven kilograms of methamphetamine.  She claims that the district court should have treated the offenses as involving no methamphetamine because (1) the government engaged in

7

sentencing factor manipulation in the reverse sting operation by controlling the drug type and amount involved in the offenses, and (2) she never transported any actual methamphetamine.

First, we consider Love's argument that the government engaged in sentencing factor manipulation. "[S]entencing factor manipulation occurs when the government's manipulation of a sting operation, even if insufficient to support a due process claim, requires that the manipulation be filtered out of the sentencing calculus." *United States v. Ciszkowski*, 492 F.3d 1264, 1270 (11th Cir. 2007). A claim of sentencing factor manipulation does not focus on the defendant's predisposition to commit the crime but instead on the government's conduct. *See United States v. Sanchez*, 138 F.3d 1410, 1414 (11th Cir. 1998). Although we have never held that sentencing factor manipulation warrants vacating a sentence, we have suggested in dicta that the government's actions in a reverse sting operation could constitute sentencing factor manipulation if the defendant can show that the government engaged in "extraordinary misconduct." *Id.* Love has not met this heavy burden.

Love argues that the government engaged in sentencing factor manipulation by setting up a reverse sting operation, which allowed the government to control the drug quantity and amount involved in the offenses. But this argument is foreclosed by our precedent. *See Sanchez*, 138 F.3d at 1414.

8

In *Sanchez*, the government created a reverse sting operation in which the defendants agreed to steal drugs from a stash house where they believed significant quantities of cocaine and marijuana were stored. *Id.* at 1412. After the defendants were convicted of conspiring to possess with intent to distribute controlled substances and sentenced based on the quantities of drugs that they believed were stored in the stash house, they argued that their sentences should be vacated because the government had engaged in sentencing factor manipulation by creating a fictitious offense that involved a large amount of drugs. *Id.* But we explained that a reverse sting operation generally was an acceptable means of investigation. Accordingly, we concluded that the government had not engaged in sentencing manipulation when it chose to have the reverse sting operation involve a large quantity of drugs. *Id.*

*Sanchez* dictates that the government did not engage in sentencing factor manipulation here by controlling the quantity and type of drug involved in Love's offenses here.[1] This prior panel precedent forecloses Love's sentencing factor

---

[1] In *Ciszkowski*, we suggested that extraordinary circumstances constituting sentence factor manipulation could exist if in a reverse sting operation the government added an element to the offense that enhanced the criminal sentence in a way that was "completely unrelated to the accompanying criminal act." 492 F.3d at 1270. We provided as an example the government's giving a defendant an undetectable silent weapon, which would expose him to an enhanced sentence, if the firearm or silencer were completely unrelated to the underlying crime. *Id.* But this reasoning does not support the conclusion that extraordinary circumstances are present here, where the government's alleged outrageous conduct—selecting the quantity and drugs involved—was directly related to the criminal act involved in the reserve sting operation to expose corrections officers who would agree to traffic drugs for money.

manipulation defense.  *See United States v. Jordan*, 635 F.3d 1181, 1189 (11th Cir. 2011) ("We are bound by prior panel decisions unless or until we overrule them while sitting *en banc*, or they are overruled by the Supreme Court.").[2]

Second, Love contends that the district court erred in calculating her guidelines range based on the offenses involving seven kilograms of methamphetamine because Love never actually transported any illegal substances. But Love admitted at the plea hearing that she had attempted to distribute seven kilograms of methamphetamine and thus admitted the amount and type of drugs involved in the offense.  Moreover, the Guidelines make clear that in a reverse sting operation, the agreed upon quantity of the drug should be used, even if the amount delivered is different.  *See* U.S.S.G. § 2D1.1, cmt. 5.  Consistent with the commentary to § 2D1.1, we conclude that the district court properly calculated the

---

[2] Love also raises related arguments that in planning the sting operation, the government engaged in outrageous conduct that violated her due process rights and constituted sentencing entrapment.  These arguments are also foreclosed.  Although we recognize a defense of outrageous conduct, which "focuses on the tactics employed by law enforcement officials to obtain a conviction for conduct beyond the defendant's disposition," the remedy for this defense is dismissal of the indictment.  *Sanchez*, 138 F.3d at 1413.  Because Love pled guilty and waived her right to challenge her conviction, her challenge is precluded.  But even if the challenge was not precluded by her plea, we cannot say the government engaged in outrageous conduct.  Love may have been motivated by a need for money.  But she voluntarily engaged in illegal conduct when she agreed to transport two backpacks that she believed contained methamphetamine to assist a drug trafficker.  As such, we cannot say that the government obtained a conviction for conduct beyond Love's disposition.

Regarding Love's sentencing entrapment claim, sentencing entrapment is the claim that a defendant, although predisposed to commit a lesser offense, is entrapped into committing a greater offense subject to greater punishment."  *Id.* at 1414 (internal quotation marks omitted). We have previously held that sentencing entrapment is not a viable defense.  *Id.*  This prior panel precedent forecloses Love's sentencing entrapment defense.  *See Jordan*, 635 F.3d at 1189.

drug quantity involved in the offense, even though Love never transported any methamphetamine.

### 2.    The District Court Did Not Err in Declining to Reduce Love's Sentence by an Additional Point for Acceptance of Responsibility.

Love also argues that she should have received an additional one-level reduction in her offense level based on acceptance of responsibility. A defendant may receive a two-level reduction in offense level for acceptance of responsibility, and the government may move for an additional one-level reduction if the defendant timely notified the government of her guilty plea, permitting the government to avoid preparing for trial. *See* U.S.S.G § 3E1.1. Although the district court awarded Love a two-level decrease, she argues that the district court erred by failing to award a three-level decrease. She argues that the government improperly refused to file the motion to punish her for exercising her appellate rights. We disagree.

The Sentencing Guidelines specifically provide the government with discretion to withhold the one-level reduction when a defendant frivolously contests relevant conduct. *See* U.S.S.G. § 3E1.1 cmt. 1(A). Even assuming that the government's purported improper motive would be sufficient to merit relief, the record does not support Love's argument. The government chose to exercise its discretion not to move for an additional reduction because at sentencing Love contested relevant conduct to which she already pled guilty. At the plea hearing,

11

Love agreed to the government's recitation of the facts of the offenses including the weight of the fictional methamphetamine that she attempted to distribute. At the sentencing hearing, however, she objected to this weight, arguing that her offenses involved no methamphetamine. Given Love's frivolous objection, the government had discretion to refuse to move for an additional one-point reduction in her offense level. The district court thus did not err when it refused to award Love the additional reduction.

**B.    Love's Sentence Was Not Substantively Unreasonable.**

Although the district court ultimately varied substantially downward from the guidelines range in imposing a 60-month sentence, Love argues that the 60-month sentence was nonetheless substantively unreasonable. In reviewing the substantive reasonableness of a sentence, we must "take[] into account the § 3553(a) factors as well as the advisory guidelines range." *United States v. Keene*, 470 F.3d 1347, 1350 (11th Cir. 2006). The § 3553(a) factors include the nature and circumstances of the offense; the history and characteristics of the defendant; the applicable guidelines range; and the need to reflect the seriousness of the offense, deter criminal conduct, protect the public from the defendant's future crimes, and avoid unwarranted sentencing disparities. *See* 18 U.S.C. § 3553(a). District courts have broad discretion to impose a sentence within the statutory range. *See United States v. Booker*, 543 U.S. 220, 233 (2005).

Love argues that the district court abused its discretion in imposing a 60-month sentence.  She primarily argues that in a case where the government engaged in sentencing factor manipulation, it is unreasonable for a court to consider the manipulated guidelines range in setting a reasonable sentence.  But because the government did not engage in sentencing manipulation, the sentence cannot be unreasonable based on that ground.

Indeed, we conclude that the court properly exercised its discretion when it imposed a 60-month sentence.  The district court considered, among other things, the nature and circumstances of Love's offense, including the fact that it occurred in a reverse sting operation in which the government decided the quantity and type of drugs that Love believed she was transporting; Love's history and characteristics, including her lack of criminal history and the economic pressures that led her to accept the payments; and the need to avoid unwarranted sentencing disparities.  Love argues that the district court should have weighed these factors differently and imposed a more lenient sentence, but we are not permitted to second guess the district court's weighing of the § 3553 factors.  *See United States v. Snipes*, 611 F.3d 855, 872 (11th Cir. 2010).

## C.    A Clerical Error in the Judgment Necessitates Remand.

Although we conclude that the district court did not err in sentencing Love, the judgment contains a clerical error.  We may raise *sua sponte* a clerical error in

13

the judgment and remand with instructions that the district court correct the error. *See United States v. Anderton*, 136 F.3d 747, 751 (11th Cir. 1998) (remanding to district court when judgment cited incorrect statute). The judgment indicates that the offenses charged in Counts 58 and 70 were conspiracy to attempt to distribute methamphetamine. But in these counts Love was actually indicted for and pled guilty to the substantive offense of attempting to distribute methamphetamine. Because it is a fundamental error for the district court to have entered a judgment reflecting a conviction for a crime for which Love was not charged, tried, or found guilty, *United States v. Massey*, 443 F.3d 814, 822 (11th Cir.2006), we remand with instructions for the district court to correct the judgment to reflect that the offense charged in Counts 58 and 70 was attempting to distribute methamphetamine.

## IV.    CONCLUSION

For the foregoing reasons, Love's sentence is affirmed. We remand for the limited purpose of correcting the clerical error in the judgment.

**AFFIRMED and REMANDED IN PART.**