UNITED STATES of America,
Plaintiff–Appellee,

v.

Carlos Antonio DUQUE, Defendant–
Appellant.

No. 94–10259.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 12, 1995.

Decided Aug. 7, 1995.

---

**1148**

Sean Bruner, Bruner & Bowman, Tucson, AZ, for defendant-appellant.

Ann E. Mosher, Asst. U.S. Atty., Tucson, AZ, for plaintiff-appellee.

Before: CUMMINGS,* SCHROEDER and RYMER, Circuit Judges.

CUMMINGS, Circuit Judge:

After being arrested in Arizona, indicted in California and subsequently re-indicted in Arizona, Carlos Antonio Duque was tried and convicted of possession with intent to distribute cocaine and conspiracy to do the same, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. Duque was arrested while unloading cocaine from a truck that had been driven from Mexico to the United States at the behest of an individual working with federal drug agents.

Duque now appeals his conviction on numerous grounds, including the contention that the delay between his original California indictment and his eventual trial in the District of Arizona violated the Speedy Trial Act. We have jurisdiction, 28 U.S.C. § 1291, and we affirm.

### BACKGROUND

This case involves a large conspiracy to import substantial amounts of cocaine from Mexico to the United States. Government agents became aware of Duque's involvement in the conspiracy in the summer of 1992, and subsequently obtained a warrant to monitor his telephone calls. In the meantime, a confidential informant working under the supervision of federal agents set up a deal with members of the conspiracy to purchase cocaine. The deal transpired on August 20, 1992, when an individual hired by the informant drove a trailer containing concealed cocaine from Mexico into Arizona. Once the truck reached Arizona, other individuals drove it to a yard belonging to the informant.

The following day Duque arrived and, along with several others, began unloading the concealed cocaine into his truck. Surveilling agents, who were videotaping the events as they occurred, arrested Duque and, after reading him his *Miranda* rights in Spanish, asked the defendant if he was "of a mind to talk to [the agents]." Duque subsequently made several inculpatory statements.

Police had also obtained a search warrant for what they believed to be Duque's residence in Tucson. Pursuant to that warrant, in addition to searching the house, agents searched a motor home and a car found on the premises, and there recovered additional cocaine along with cash and drug packaging materials.

Duque and a number of alleged co-conspirators were indicted in Los Angeles on September 8, 1992, and Duque made his first represented appearance on that indictment on September 16, 1992. On December 21, 1992, after a number of preliminary motions had been ruled on, defense counsel for several of Duque's co-conspirators moved to transfer the entire case to the federal district court for the District of Arizona. Government prosecutors initially opposed the motion to transfer but eventually acceded. On February 3, 1993, with the consent of all the defendants including Duque, the California judge transferred the case to the District of Arizona. Instead of merely ordering the transfer, however, the district judge decided to dismiss the California indictment so that the government could re-indict the defendants in Arizona.

* Honorable Walter J. Cummings, United States Circuit Judge for the Seventh Circuit, sitting by designation.

Duque was indicted in Arizona on February 3, 1993, the same date that the California district judge approved the transfer, and made his first represented appearance on March 29, 1993. The original California indictment was dismissed on November 5, 1993, and Duque went to trial in the District of Arizona on January 25, 1994.

During voir dire of the jury, Duque requested dismissal for cause of a panel member who expressed strong feelings against drug sellers. The district judge denied this request, and Duque exercised a peremptory strike to remove the panel member.

Duque was convicted and sentenced to life in prison, based on the district judge's base calculation of 42 with a two-point increase for obstruction of justice (an apparent attempt to orchestrate an escape), a three-point increase for his role in the offense, and a two-point decrease for acceptance of responsibility.

## DISCUSSION

Of Duque's numerous claims on appeal, only one merits extended discussion.

### I. *Speedy Trial Act*

Under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.,* a defendant must be brought to trial "within seventy days from the filing date ... of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). The statute provides for numerous exclusions from the computation of the 70–day period, including, *inter alia,* time designated for transport of defendants and for the preparation and hearing of motions. These exclusions apply to all co-defendants in a case. *United States v. Butz,* 982 F.2d 1378, 1381 (9th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 250, 126 L.Ed.2d 203 (1993).

■ The appellate court reviews for clear error a district court's findings concerning speedy trial violations. *Id.* at 1380. Questions of law concerning the application of the Act are reviewed *de novo. United States v. Wickham,* 30 F.3d 1252, 1253 (9th Cir.1994).

Duque argues that the Speedy Trial Act clock began ticking on the date he and his co-defendants made their initial California appearance and expired well in advance of his Arizona trial. He contends that because the California district judge did not dismiss the original indictment until November 5, 1993, well after the Arizona indictment had issued, the latter should be viewed as a superseding indictment which retains the original Speedy Trial Act clock. *See United States v. Rojas–Contreras,* 474 U.S. 231, 234, 106 S.Ct. 555, 557, 88 L.Ed.2d 537 (1985) (superseding indictment does not provide new period for trial preparation); *United States v. Clymer,* 25 F.3d 824, 827 n. 2 (9th Cir.1994) (when a superseding indictment contains charges which must be joined with the original charges, Speedy Trial Act calculations begin from the date of the original indictment); *United States v. Karsseboom,* 881 F.2d 604, 606–07 (9th Cir.1989) (where trial court dismisses some counts and defendant subsequently reindicted for same conduct, both retained counts and new indictment inherit original clock).

■ The fact that the California indictment survived for a time beyond the Arizona indictment does not automatically transform the latter into a superseding indictment. Although Duque attempts to pin both blame and nefarious motives for the second indictment on the government, the Arizona indictment resulted from a motion made by several of Duque's co-defendants and eventually acceded to by him. The California trial judge warned them prior to granting their motion for a change of venue, which the government initially opposed, that "If you go to Arizona, you may not go to trial for several weeks or months." The defendants continued to press their motion and eventually prevailed; the judge informed the defendants that "What is being proposed here in furtherance of your attorneys' request that this matter be transferred to Arizona is that the government is going to dismiss the charges here." Although the chronology of the various indictments and dismissals is somewhat confusing, it is clear that the Arizona indictment was intended chiefly to accommodate the defendants and not, like a superseding indictment, to clarify or remedy defects in the existing

charge. Thus it is most properly viewed as a re-indictment, despite the fact that it preceded dismissal of the previous indictment by some months.

The Speedy Trial Act provides two textual guides to aid in the determination of how the time is to be calculated between indictment and re-indictment:

> If any indictment or information is dismissed upon motion of the defendant, or any charge contained in a complaint filed against an individual is dismissed or otherwise dropped ... and thereafter ... an information or indictment is filed charging such defendant with the same offense or an offense based on the same conduct ... [the Speedy Trial Act clock starts fresh].

18 U.S.C. § 3161(d)(1); *see also United States v. McCown,* 711 F.2d 1441, 1446 (9th Cir.1983) (when indictment is dismissed on defense motion, "any subsequent step toward prosecution causes the time period to begin running anew."). If the indictment is dismissed at the government's behest, on the other hand,

> and thereafter a charge is filed against the defendant for the same offense, or any offense required to be joined with that offense, any period of delay from the date the charge was dismissed to the date the time limitation would commence to run as to the subsequent charge had there been no previous charge [is tolled].

18 U.S.C. § 3161(h)(1); *see also United States v. Feldman,* 788 F.2d 544, 548 (9th Cir.1986), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 955, 93 L.Ed.2d 1003 (1987).

■ The text of the statute, as well as Ninth Circuit case law, thus suggest that the identity of the author of the motion for dismissal is paramount in determining whether the clock should be restarted or merely tolled. *See Feldman,* 788 F.2d at 549 (noting that 18 U.S.C. § 3161(d)(1) may apply "to any manner of dismissal of an indictment except on the government's own motion," and should apply where the defendant rather than the government benefits from the dismissal); *see also McCown,* 711 F.2d at 1446. Analysis of this particular case is complicated by the fact that neither the government nor the defendants bore clear responsibility for the reindictment. The defendants moved to transfer venue pursuant to Fed.R.Crim.P. 21(b), which allows for such action but does not require dismissal and re-indictment. These latter steps apparently came at the government's behest, as part of their agreement to transfer. But the defendants also requested and received severance, a step which once taken required the government to re-indict.

■ Unfortunately for Duque, however, whether the clock was restarted or merely tolled in his case does not alter the outcome. If the Arizona indictment is viewed as restarting the clock, his claim, which depends on inclusion of non-excludable days from California, is eviscerated. If the non-excludable days from California are counted but the period between the motion for change of venue and the first appearance in Arizona is tolled,[1] Duque fares no better. He concedes that at most 105 non-excludable days elapsed before his motion to dismiss on June 28, 1993.[2] (His brief referenced three days that accrued after the motion to dismiss, but under *United States v. Wirsing,* 867 F.2d 1227, 1230 (9th Cir.1989), these days are not counted.) Tolling the time between February 3, when the California district court ordered the change of venue, and March 29, when Duque and his co-defendants made their first appearance, leaves 64 non-excludable days.[3] Such a delay does not violate the Speedy Trial Act in letter or spirit. Thus we need not decide whether under the particular circumstances of this case the re-indictment restarts or merely tolls the Speedy Trial

---

1. See 18 U.S.C. § 3161(h)(1)(G) (excluding any period of delay "resulting from any proceeding relating to the transfer of a case ... under the Federal Rules of Criminal Procedure.").

2. Duque actually argues that we should exclude the time expended in originally bringing the co-defendants to California, but we decline to do so and will instead consider his lower baseline of 105 days. *See United States v. Calabrese,* 825 F.2d 1342, 1347 (9th Cir.1987).

3. If the reindictment is deemed to restart the clock, Duque does not argue that there was a Speedy Trial Act violation.

clock; either way, Duque's challenge falls short.

## II. *Remaining Claims*

The remainder of Duque's claims can be addressed briefly.

### A. *Admission of Expert Testimony*

■ Duque argues that the testimony of Aaron Graham, a self-described college law enforcement instructor and former Drug Enforcement Administration agent, was irrelevant and prejudicial. Graham testified regarding the movement of cocaine from Latin America into the United States and the methodologies of large-scale narcotics importers. Much of this testimony, it is true, was of dubious relevance to the case at hand, which involved a fairly straightforward conspiracy. However, given the overwhelming evidence against Duque—he was quite literally caught red-handed on a videotape—any error was harmless.

### B. *Outrageous Government Conduct*

■ Duque contends that the government acted in an outrageous manner in causing controlled substances to be transported through Mexico without the knowledge and participation of Mexican law enforcement officials. *See United States v. Citro*, 842 F.2d 1149, 1152 (9th Cir.) (investigation that is "so grossly shocking and so outrageous as to violate the universal sense of justice" may violate due process), *cert. denied*, 488 U.S. 866, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988). The mere fact of government involvement in a crime does not support a finding of outrageous conduct. *See Hampton v. United States*, 425 U.S. 484, 489–90, 96 S.Ct. 1646, 1649–50, 48 L.Ed.2d 113 (1976) (government's conduct in supplying contraband for use in investigation was not outrageous). Duque attempts to bolster his challenge by pointing to the fact that the cocaine was moved across the border from Mexico into Arizona without the knowledge of Mexican government officials. However, he has no standing to raise an argument regarding Mexico's sovereignty. *See United States v. Mann*, 829 F.2d 849, 852 (9th Cir.1987).

### C. *Admission of Wiretap Evidence*

Duque challenges the admission of wiretap evidence on the ground that the supporting affidavit omitted questions about the informant's credibility. Duque did not make a sufficient preliminary showing to obtain a hearing regarding this allegation. In any event, a redacted affidavit still would have supported probable cause. *See United States v. Lefkowitz*, 618 F.2d 1313, 1317 (9th Cir.), *cert. denied*, 449 U.S. 824, 101 S.Ct. 86, 66 L.Ed.2d 27 (1980).

Duque also contends that the government failed to demonstrate the necessity of wiretapping, but we have approved the use of wiretaps in like circumstances and see no reason to depart from our precedents in this case. *See, e.g., United States v. Torres*, 908 F.2d 1417, 1422 (9th Cir.), *cert. denied*, 498 U.S. 948, 111 S.Ct. 366, 112 L.Ed.2d 329 (1990); *United States v. Carneiro*, 861 F.2d 1171, 1177 (9th Cir.1988).

### D. *Admission of Evidence Seized Pursuant to Search Warrant*

■ Duque argues that agents exceeded the scope of the warrant for the Tucson residence by searching vehicles on the premises. Although search warrants ideally state their full scope with particularity, "a search warrant authorizing a search of a particularly described premises may permit the search of vehicles owned or controlled by the owner of, and found on, the premises." *United States v. Percival*, 756 F.2d 600, 612 (7th Cir.1985) (so holding and collecting cases); *see also United States v. Reivich*, 793 F.2d 957, 963 (8th Cir.1986) (citing *Percival* with approval).

### E. *Admission of Post–Arrest Statements*

■ Duque challenges the admission of statements he made to arresting officers on the basis that the arresting agent did not ask if he wished to waive his *Miranda* rights and coerced him by asking him, more or less, whether he wished to "cooperate." Both claims lack merit. Duque was advised of his rights, asked, "Are you of a mind to talk to us?" and proceeded to speak. This is a clear indication of waiver and, even assuming the agent's question suggested to Duque that he

might benefit from early disclosure, it falls far short of coercion. *See United States v. Guerrero,* 847 F.2d 1363, 1365–67 (9th Cir. 1988); *Hutto v. Ross,* 429 U.S. 28, 30, 97 S.Ct. 202, 203, 50 L.Ed.2d 194 (1976).

### F. *Refusal to Strike Juror for Cause*

The trial court's refusal to strike for cause a venire member who initially demonstrated some hesitation about his ability to evaluate the case neutrally is harmless even if erroneous (since Duque eventually used a peremptory strike to remove the venire member) unless Duque can demonstrate a separate constitutional violation. He cannot, and his claim fails. *See Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988) ("So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."); *United States v. Baker,* 10 F.3d 1374, 1404 (9th Cir.1993) (same), *cert. denied,* —— U.S. ——, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994).

### G. *Calculation of Offense Level and Upward Adjustment*

In sentencing Duque, the district judge took into account amounts of cocaine seized on two prior occasions for which no charges were brought under the Arizona indictment. This is proper under the Guidelines, which authorize a district court to consider other instances of uncharged criminal behavior where these constitute "relevant conduct." *United States v. Fine,* 975 F.2d 596, 600 (9th Cir.1992). Moreover, Ninth Circuit case law has specifically approved the use of previously dismissed charges in calculating a defendant's base offense level. *See id.*

Duque also challenges the upward adjustment for obstruction of justice, based on his attempted escape, as factually erroneous, but this argument is untenable given the raft of evidence introduced by the government. *See United States v. Ancheta,* 38 F.3d 1114, 1118 (9th Cir.1994) (once judge makes a factual finding that defendant obstructed justice, upward departure is mandatory).

### H. *Eighth Amendment and Due Process Claims*

Ninth Circuit case law forecloses Duque's Eighth Amendment and due process challenges to his life sentence. The fact that the Sentencing Guidelines' base offense level of 42 for drug offenses existed only during a relatively small window of time does not violate due process, given that district courts must apply the Sentencing Guidelines in effect on the date of sentencing. 18 U.S.C. § 3553(a)(4); *United States v. Robinson,* 958 F.2d 268, 272 (9th Cir.1992). As for his Eighth Amendment claim, Duque cites no case law in support of the proposition that a life sentence for possession of thousands of pounds of cocaine is constitutionally defective. Instead, he concedes the existence of both Ninth Circuit and Supreme Court cases holding just the opposite. *See, e.g., Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991) (life sentence for possession of 1.5 pounds of cocaine); *United States v. Van Winrow,* 951 F.2d 1069 (9th Cir.1991) (life sentence for possession of 150 grams of cocaine with intent to distribute).

### CONCLUSION

For the above-stated reasons, Duque's conviction and sentence are AFFIRMED.