IN THE SUPREME COURT OF THE STATE OF DELAWARE

KAREEM BRADLEY, §
§ No.   554, 2017
Defendant Below, §
Appellant, § Court Below:   Superior Court
§ of the State of Delaware
v. §
§ Cr. ID. No. 1602015338A (N)
STATE OF DELAWARE, §
§
Plaintiff Below, §
Appellee. §
§
§
§

Submitted:   November 28, 2018
Decided:   February 4, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

**O R D E R**

On this 4th day of February 2019, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)     The appellant, Kareem Bradley, appeals from a jury verdict finding him guilty of Possession of a Firearm By a Person Prohibited and Possession of Ammunition by a Person Prohibited.   The firearm involved was found in a garage possessed by Bradley.   He makes one claim on appeal.   He claims that the Superior Court committed plain error by allowing into evidence items obtained from a warrantless and invalid search of the garage.   His claim is set forth in three subparts.

First, he contends that the search of the garage violated his rights under the Fourth Amendment and Article I, § 6 of the Delaware Constitution. In support of this contention, he argues that the application for the warrant authorizing the search of the garage contained information obtained from a prior warrantless, unlawful entry into the garage. He further argues that the inevitable discovery rule does not apply. Second, he contends that even if the inevitable discovery rule applies (or the warrant was otherwise valid), the warrant was constitutionally defective because the warrant application lacked particularity. It lacked particularity, he argues, because it did not establish a nexus between the garage and his unlawful activity and failed to specify the places within the garage the police intended to search. Finally, he contends that the officers exceeded the scope of the warrant by searching a vehicle in the garage because the vehicle was not identified in the application for the warrant.

(2) In November of 2015, Detective Barnes of the Wilmington Police Department and FBI Agent Haney received information from a trusted and past-proven reliable, confidential informant that Bradley was involved in marijuana distribution in Wilmington. The informant told the officers that Bradley possessed multiple firearms, including a handgun with an extended magazine and an AK-47-style assault rifle. The informant also told the officers that Bradley lived in Southbridge and frequented a garage in the area of 13th and Locust Streets. Furthermore, "the informant advised that s/he observed Bradley illegally purchase a

gun from someone while inside the shop in the area of 13th and Locust streets."[1] The informant also supplied the officers with a text message from Bradley that indicated he was engaged in trafficking marijuana.

(3) The police began surveillance of Bradley in January 2016. Surveillance continued for approximately two months. During this period, the police observed him meeting with subjects and engaging in what appeared to be hand-to-hand drug transactions. They also observed that he frequently visited three locations: his residence at 317 Townsend Street, his mother's residence at 2303 Thatcher Street, and a garage on the 1200 block of Locust Street. Officers observed him driving a red Dodge Challenger and a black Chrysler 300. "There were also several occasions where, while Bradley was at 317 Townsend or the garage in the 1200 block of Locust Street, subjects would respond to these locations and enter/exit same within a few minutes or less"—activity consistent with drug dealing according to Detective Barnes's training and experience.[2] The police searched a trash can at the curb directly in front of Bradley's residence and found "numerous pieces of drug paraphernalia," including "numerous empty, small, torn, knotted plastic sandwich bags commonly used to package drugs for sale," and a "small piece of marijuana blunt."[3] In the fourth week of February, the police stopped an individual after he

---

[1] App. to Appellant's Opening Br. at A22, ¶ 12.
[2] *Id.* at A16, ¶ 14.
[3] *Id.* at A16, ¶ 14.

had engaged in one of the observed hand-to-hand transactions with Bradley and found that he possessed marijuana.

(4) On February 22, 2016, the police secured a search warrant for Bradley's residence, the Chrysler, and Bradley's person (the "first warrant"). At 5:09 p.m. that same day, Bradley was stopped in his black Chrysler and arrested; he was found in possession of several individually packaged bags of marijuana, a large sum of money, and a key ring with numerous keys. The officers then searched his residence pursuant to the first warrant and found more individually packaged bags of marijuana and another large sum of money. When the officers asked Bradley about the Locust Street garage, he denied any knowledge of it.

(5) At around 6:30 p.m. that night, Detective Barnes and Agent Haney arrived at and opened the locked garage on Locust Street with the keys recovered from Bradley. According to Detective Barnes's testimony at the preliminary hearing, they walked in after unlocking the garage and observed a parked car, but did not attempt to open it. After the officers determined that the keys found on Bradley's person fit the locks to the garage, Officer Barnes asked Bradley if he leased the garage. He responded by saying he leased the garage with a friend to work on cars.

(6) Detective Barnes left to get a search warrant for the garage (the "garage warrant"), while Agent Haney remained with other officers to secure the location.

4

The garage warrant was obtained at 8:30 p.m. The application for the warrant included the same facts supporting the first warrant, except the affiant added that the officers found individually packaged bags of marijuana and large sums of money on Bradley's person and in his residence while executing the first warrant, that the keys recovered from Bradley fit the locks to the garage, that Bradley admitted to leasing the garage after the keys were confirmed to fit the locks, and that the informant had previously informed the officers that he or she observed Bradley illegally purchase a gun from someone while inside the garage. The affiant also changed the address of the garage from "1200 block of Locust Street" to "1203 Locus Street." [4] According to Detective Barnes's training and experience, Bradley's actions were consistent with maintaining several caches of drugs in different locations to facilitate drug dealing. Although the affidavit did not mention the vehicle in the garage, the garage warrant authorized the search of a "[o]ne story brick garage building with a white front door and a mailbox to the right marked 1203," including "[a]ny/all curtilages."[5]

(7) At some point, the officers discovered that one of the keys recovered from Bradley unlocked the car.[6] Agent Haney observed a zipped, cloth lunchbox

---

[4] *Compare id.* at A16, ¶ 14 (first warrant affidavit), *with id.* at A24, ¶ 16 (garage warrant affidavit).
[5] *Id.* at A18.
[6] The record is unclear as to precisely when the car in the garage was unlocked. Appellant's Opening Br. at 7 n.2. *Compare* App. to Appellant's Opening Br. at A43-44 (Detective Barnes testifying at the preliminary hearing that the car was not unlocked until after he returned with the garage warrant), *with* App. to Appellee's Answering Br. at B5 (Agent Haney testifying at trial that

sitting on the driver's seat, in which he found a loaded firearm with an extended magazine.

(8) At the preliminary hearing, defense counsel ("DC") questioned Detective Barnes ("DET") concerning the police's initial entry into the garage:

> DC: Prior to the execution of the search warrant nobody went into the garage, is that what you're telling us?
>
> DET: No. We did go into the garage.
>
> DC: Okay. And what did you do while you were in the garage waiting for the search warrant, secure it?
>
> DET: Yes
>
> DC: And what did that consist of?
>
> DET: Entering, observing what was in the garage, and leaving the garage.
>
> DC: Okay. So you walked in the garage. There's basically nothing in the garage other than this vehicle that you're talking about, right?
>
> DET: Correct.
>
> DC: You don't attempt to enter the vehicle or to open any of the doors. You just see it. You see there's nothing there of any danger and then you secure the premises and wait for the return of the warrant?
>
> DET: Correct.[7]

---

he called Detective Barnes (who had left to get the garage warrant) to tell him that he found a firearm in the car).

[7] App. to Appellant's Opening Br. at A43.

Bradley's trial counsel never filed a motion to suppress the evidence seized in the garage.

(9) "To warrant review on appeal when the issue has not been fairly presented [to the trial court], there must be 'plain error.'"[8] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[9] "[T]he doctrine of plain error is limited to material defects which are apparent on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[10] There is no such error here.

(10) Bradley contends that the Superior Court committed plain error by not suppressing the firearm found in the garage for three reasons. Before discussing each of his arguments in detail, however, it must first be noted that Bradley's failure to file a motion to suppress before trial constitutes a waiver of the arguments he now makes.[11] Moreover, this Court generally declines to review suppression issues not raised below because, in "the absence of a motion to suppress and a pretrial suppression hearing, there is not an adequate record upon which to conduct an

---

[8] *Zhurbin v. State*, 104 A.3d 108, 113 (Del. 2014).
[9] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (en banc).
[10] *Id.*
[11] *Mills v. State*, 947 A.2d 1122, 2007 WL 4245464, at *4 (Del. Dec. 3, 2007) (Table).

appellate review of the suppression claim."[12]   Nonetheless, under Supreme Court Rule 8, this Court may review questions not presented to the trial court "when the interests of justice so require."[13]

(11)   Bradley contends that the interest of justice exception to Rule 8 applies here, and therefore this Court should review his claim, because "but for the police officer's illegal conduct there would not have been any evidence on which to proceed to trial under the [person-prohibited charges]."[14]   Each of his three arguments for suppression will be addressed in turn.

(12)   First, Bradley contends that the police violated his federal and state constitutional rights when they used the keys recovered from him to unlock and enter the garage without a warrant and that the inevitable discovery rule does not apply. In support of this contention, he first argues that the inevitable discovery rule cannot apply because the police were not seeking to obtain a warrant prior to their initial entry.   However, whether the police initiated the process of obtaining the garage warrant before or after initially entering the garage is irrelevant.

(13)   Under United States Supreme Court precedent, evidence seized before the police obtain a warrant will not be suppressed if the evidence would have been discovered independently of an initial unlawful search or inevitably would have been

---

[12]   *Id.* (alteration and internal quotation marks omitted).
[13]   Supr. Ct. R. 8.
[14]   Appellant's Opening Br. at 8.

discovered through lawful means.[15]  Here, the question is whether the garage warrant was supported by probable cause that is independent of anything the police learned when they initially entered the garage or whether the police otherwise would have inevitably discovered through lawful means the information used to obtain the warrant.[16]

(14)  Bradley argues that the inevitable discovery rule does not apply because the garage warrant contained information obtained during the initial warrantless entry: "paragraph 14 of the first warrant and paragraph 16 of the garage search warrant are the same verbatim except that the language of '1200 block of Locust Street' was suddenly replaced with an exact address of the garage, '1203 Locust Street.'"[17]  He claims, "This shows that the police did not know the exact location of the garage until they illegally used Mr. Bradley's keys to attempt to open the various locks of the building."[18]

(15)  However, because Bradley did not raise this issue below, it is not apparent from the record that the officers did not know, or would not have discovered, the specific address of the garage prior to obtaining the warrant.  The officers had information from a trusted, confidential informant, and they observed

---

[15] *Murray v. United States*, 487 U.S. 533, 537-39 (1988); *Nix v. Williams*, 467 U.S. 431, 443-44 (1984); *see also Hardin v. State*, 844 A.2d 982, 985, 987 (Del. 2004) (applying the inevitable discovery rule).

[16] *See Murray*, 487 U.S. at 542; *Nix*, 467 U.S. at 444.

[17] Appellant's Opening Br. at 23, 23-25.

[18] *Id.* at 23.

Bradley frequently visit the location of the Locust Street garage. At the preliminary hearing, Bradley's trial counsel questioned Detective Barnes about the officers' actions in initially entering the garage but never questioned whether the police learned of the garage's specific address only because of this initial entry. Even assuming the police did not know the exact address of the garage until they approached the garage for the initial entry, it is clear to us that the police would have inevitably discovered (and likely actually discovered) its exact address through other lawful means, such as by walking up to and looking at the garage mailbox, which was marked 1203,[19] without needing to test the keys. Because it is not apparent on the face of the record that the police did not know, or would not have inevitably discovered, the exact address of the garage, there is no plain error.

(16)   In his reply brief, Bradley relies on the Supreme Court's recent decision in *Collins v. Virginia* to draw a distinction between a "search" and a "seizure."[20]   In that case, the Court held that a police officer engaged in a "search" when he walked onto a driveway to inspect a motorcycle because such activity was an intrusion into the "curtilage of [Collins's] home."[21]   *Collins* is inapplicable here because that case had nothing to do with inevitable discovery. *Murray v. United States*, in which the

---

[19] App. to Appellant's Opening Br. at A18 (describing the garage as a "[o]ne story brick garage building with a white front door and a mailbox to the right marked 1203").
[20] 138 S. Ct. 1663 (2018).
[21] *Id.* at 1671.

Supreme Court held that the inevitable discovery rule applies to evidence initially discovered during an unlawful "search" but later obtained lawfully,[22] renders the question of whether the initial unlawful activity was a "seizure" as opposed to a "search" irrelevant.

(17) Second, Bradley contends that, in any event, the subsequent search warrant for the garage was invalid because it failed to (1) show a nexus between the crime of drug dealing and the garage and (2) state with particularity the vehicle within the garage that the police intended to search.

(18) "A search warrant may be issued only upon a showing of probable cause."[23] "Probable cause requires that, 'given all the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[24] Although probable cause is not established until a nexus between the items to be sought and the place to be searched appears, "[c]oncrete firsthand evidence that the items sought are in the place to be searched is not always required in a search warrant."[25] "An affidavit in support of a search warrant must, within the four corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized

---

[22] 487 U.S. at 537.
[23] *Fink v. State*, 817 A.2d 781, 786 (Del. 2003).
[24] *Stones v. State*, 676 A.2d 907, 1996 WL 145775, at *2 (Del. Feb. 23, 1996) (Table) (omission omitted) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).
[25] *Hooks v. State*, 416 A.2d 189, 203 (Del. 1980).

will be found in a particular place."[26]  "In reaching a decision, a magistrate's finding should be based on the totality of the circumstances."[27]  "After-the-fact scrutiny by the courts of the sufficiency of an affidavit should not take the form of *de novo* review.  A magistrate's determination of probable cause should be paid great deference by reviewing courts."[28]

(19)  Here, the affidavit in support of the garage warrant set forth facts adequate for a judicial officer to form a reasonable belief that evidence of Bradley's criminal activity would be found in the garage, thus establishing the requisite nexus. First, the affidavit stated that the police found individually packaged bags of marijuana and large sums of currency during the prior searches of Bradley's person, Chrysler 300, and residence.  The affiant did not simply suspect that Bradley was trafficking marijuana.  He had hard evidence of such.  The affiant also stated that (1) a past-proven reliable informant observed Bradley illegally purchase a gun while inside the garage and (2) the police, on several occasions while Bradley was in the garage, observed subjects enter and exit the garage within a few minutes or less, activity consistent with drug dealing according to the affiant's training and

---

[26] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006) (en banc).
[27] *McKinney v. State*, 107 A.3d 1045, 1047 (Del. 2014) (en banc).
[28] *Smith v. State*, 887 A.2d 470, 473 (Del. 2005) (en banc) (alteration omitted) (quoting *Gates*, 462 U.S. at 236).

12

experience. The affidavit thus adequately connected Bradley's criminal activity to the garage.

(20) In support of his argument that there was no nexus between Bradley's drug dealing and the garage, Bradley cites several cases, but all of these cases involved situations where the affidavit did not provide any visual observations of illegal or suspicious activity connecting the alleged criminal activity with the place to be searched. For example, in *State v. Cannon*, the Superior Court declined to hold that probable cause to search a residence could be supported "solely by a statement of police expertise combined with mere presence of defendant's car at both a drug transaction and his residence."[29] And in *State v. Ada*, the Superior Court declined to find probable cause based on an officer's training and experience and an informant's assertion that another suspected drug dealer (not the defendant) was "possibly selling drugs" for a subject (possibly the defendant) living on the block of the defendant's residence (the place to be searched).[30] In *Ada*, there was no police observation of illegal or suspicious activity occurring at the residence.[31] Here, unlike in these cases, the affidavit provided at least two observations of illegal or suspicious activity at the garage: (1) Bradley illegally purchasing a firearm at the

---

[29] 2007 WL 1849022, at *6 (Del. Super. June 27, 2007)
[30] 2001 WL 660227, at *5 (Del. Super. June 8, 2001).
[31] *Id.*

13

garage and (2) subjects entering and exiting the garage within a few minutes while Bradley was at the garage.

(21) Bradley also relies, in part, upon our recent case of *Buckham v. State*, in which we stated that a search warrant must "describe the things to be searched with sufficient particularity and be no broader than the probable cause on which it is based."[32] In *Buckham v. State*, we held that it was plain error to admit evidence seized from a cell phone pursuant to a search warrant that did not state with particularity the exact places on the phone the police wished to search.[33] We explained that "warrants issued to search electronic devices call for particular sensitivity" because "[m]odern smartphones store an unprecedented volume of private information, and a top-to-bottom search of one can permit the government access to far more than the most exhaustive search of a house."[34]

(22) In this case, however, the warrant authorized the police to search a small garage. Because searching a small garage is not as intrusive as searching the entire contents of a cell phone,[35] the police were not required to describe with particularity the places within the garage they intended to search.[36] Moreover, the

---

[32] *Buckham v. State*, 185 A.3d 1, 18 (Del. 2018) (internal quotation marks omitted).
[33] *Id.* at 18-19.
[34] *Id.* (internal quotation marks omitted).
[35] *See id.* at 18.
[36] *Cf. United States v. Ross*, 456 U.S. 798, 821 (1982) ("[A] warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found."). For this reason, Bradley's specific argument that the police failed to particularly describe the vehicle in the garage is best considered in the

garage warrant specified the types of items the police sought to seize, which included marijuana and paraphernalia as well as "any rifle, pistol, shotgun or any device that a shot may be discharged or any weapon manifestly utilized to protect illegal drugs."[37] The garage warrant thus described with sufficient particularity the thing to be searched, the garage, by providing its exact address, and was no broader than the probable cause on which it was based. It authorized the police to search for drugs and weapons in the garage, the suspected presence of which formed the basis for the probable cause on which the warrant was granted.

(23) Because the garage warrant contained facts showing a nexus between Bradley's criminal activity and the garage and because it described the place to be searched with sufficient particularity and was no broader than the probable cause on which it was based, there was no plain error here.

(24) Finally, Bradley contends that the officers executing the garage warrant exceeded its scope by searching the locked vehicle within the garage because the vehicle was not mentioned in the warrant. In *United States v. Ross*, the Supreme Court held that a lawful search of fixed premises generally extends to the entire area in which the object may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search.[38] *Ross* has been

---

context of his final argument.

[37] App. to Appellant's Opening Br. at A20, ¶ 7 (altered to be lowercase).

[38] 456 U.S. at 820-21; *see also Santini v. State*, 663 A.2d 488, 1995 WL 420802, at *2 (Del. July

extended to permit searches of vehicles found on or within the premises for which the police have a search warrant.[39] "Although a car is less fixed than a closet or cabinet, however, it is no less fixed than a suitcase or handbag found on the premises, both of which can readily be searched under *Ross* if capable of containing the object of the search."[40] Here, because the garage warrant authorized the search of the entire garage and any and all curtilages thereof for marijuana, paraphernalia, and weapons and because such items reasonably could be found in the vehicle, there was no plain error in allowing into evidence the firearm the police found in the vehicle.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is **AFFIRMED.**

BY THE COURT:

/s/   James T. Vaughn, Jr.
Justice

---

7, 1995) (Table) (citing *Ross* and holding that the police did not exceed the scope of a warrant authorizing the search of the defendant's house for drugs when they opened a safe in his bedroom).

[39] *See, e.g., United States v. Duque*, 62 F.3d 1146, 1151 (9th Cir. 1995); *United States v. Gottschalk*, 915 F.2d 1459, 1461 (10th Cir. 1990); *United States v. Percival*, 756 F.2d 600, 612 (7th Cir. 1985).

[40] *Percival*, 756 F.2d at 612; *see also United States v. Beall*, 581 F. Supp. 1457, 1466 (D. Md. 1984) (holding that warrant for search of auto body shop justified search of U-Haul truck parked within shop).

16